UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **AZZAM AHMED**, | ) | Case No.  1:09 CV 0624 |
| | ) | |
| Petitioner, | ) | Judge Kathleen O'Malley |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| | ) | (Resolving ECF # 1) |
| **RICHARD HALL, WARDEN**, | ) | |
| | ) | |
| Respondent, | ) | Magistrate Judge James S. Gallas |

On February 11, 2004, petitioner Azzam Ahmed was convicted in the Common Pleas

Court of Cuyahoga County on two counts of rape, seven counts of sexual battery, and 11 counts

of sexual imposition. On February 18, 2004 he was sentenced to 45 years of incarceration and

later resentenced on May 23, 2006 to the same aggregate term. Continuing to the present Dr.

Ahmed has engaged in numerous counseled state and Federal procedures to overturn these

convictions or reduce his sentence. On March 21, 2009, he filed a counseled petition under 28

U.S.C. §2254 for Federal habeas corpus review on eight grounds of alleged Constitutional

violations.  Also on that same date he filed in the state courts of Ohio both a petition for state

post-conviction relief and motion for leave to file delayed motion for new trial. (See ECF #8-3,

Respondent's Ex. 51-53). The matter of the habeas petition has been referred to the undersigned

for report and recommendation, and the undersigned has denied Dr. Ahmed's motions to stay the

Federal proceedings pending the outcome of simultaneously filed state proceedings. (ECF #5,

#10).  At this time the unresolved issues in state court concern: (1) Dr. Ahmed's designation as a

sexual predator, in light of the Fifth Appellate District's finding that the "Adam Walsh Act" is

unconstitutional, and the Ohio Supreme Court's acceptance of the State's appeal under its

2

conflict jurisdiction. See *Ahmed v. State*, 2009 WL 2486910, 2009-Ohio-3989 ( Ohio App. 5

Dist. Aug. 6, 2009), *appeal allowed*, 123 Ohio St. 3d 1508, 917 N.E.2d 811, 2009-Ohio-6210

(Table Dec. 2, 2009);  and, (2) the instances of alleged prosecutorial misconduct in the still

pending motion and post-conviction petition before the Common Pleas Court. See Case No. CR-

03-437437  http://cp.cuyahogacounty.us


**Overview:**

Ahmed, a licensed obstetrician and gynecologist, operated medical offices in Parma, Newbury, and Twinsburg. In May 2003, he was charged with 27 counts of sexual imposition, 24 counts of sexual battery, and two counts of rape, involving 37 former patients. The alleged offenses occurred at Ahmed's offices while the victims were receiving medical treatment.

 The matter proceeded to trial and the jury found Ahmed guilty on both rape counts, seven counts of sexual battery, and 11 counts of sexual imposition, but not guilty on the remaining 30 charges. The trial court classified Ahmed a sexual predator and imposed the maximum prison term of ten years on each rape count, and five years on five counts of sexual battery, with all counts to run consecutively, for a total sentence of 45 years. (footnote omitted).

*State v. Ahmed,* 2005 WL 1406282, at *1, 2005-Ohio-2999 (Ohio App. 8 Dist.). [1]

Dr. Ahmed 's convictions for two counts of rape were under Ohio Rev. Code

§2907.02(A)(1)(c), which reads:

(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies: * * * *
(c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender

---

[1] Dr. Ahmed has no objection this basic overview and even so, the state appellate court's findings of fact are presumed correct and have not been discredited by clear and convincing evidence of error. See 28 U.S.C. § 2254(e)(1);  *Mitzel v. Tate,* 267 F.3d 524, 537 (6th Cir. 2001).

3

knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age.

"Sexual conduct" includes insertion, however slight into a vaginal or anal opening of another "without privilege to do so." Ohio Rev. Code §2907.01(A). The statutory definition of "privilege" is found under Ohio Rev. Code §2901.01(A)(12):

"Privilege" means an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity.

The relevant portions of Ohio's sexual battery statute of which Dr. Ahmed was convicted provide:

(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply: * * * *

(2) The offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired.

(3) The offender knows that the other person submits because the other person is unaware that the act is being committed.

As for sexual imposition, Dr. Ahmed was convicted under Ohio Rev. Code §2907.06(A)(1):

(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

(1) The offender knows that the sexual contact is offensive to the other person, or one of the other persons, or is reckless in that regard.

4

**Analysis of the Eight Grounds Presented for Federal Habeas Corpus Review:**

**I. Ground One is Procedurally Defaulted.**

> **I**. The trial court's pervasive restriction of Petitioner's cross-examination of the State's witnesses as to bias and to material issues raised in direct examination by the State violated the Petitioner's right to fair trial, as protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, in that it denied no only the Petitioner his right to confront his accusers, but also his right to present a defense, as protected by the Sixth Amendment to the United States Constitution.

Dr. Ahmed maintains in his supporting facts (Petition p. 5, ECF #1) that the state trial court's rulings prevented him from illuminating the jury on the fact that several of the complaining witnesses in the criminal trial had filed civil suits for monetary damages against Dr. Ahmed as former patients.  The warden counters that Federal habeas corpus review is barred due to Dr. Ahmed's failure to raise this matter as a Constitutional issue in his direct appeal, *i.e.*, a matter of fair presentation. The warden is correct, this ground has been procedurally defaulted due to the failure to fairly present it to the Ohio Supreme Court.


*A. Lack of Fair Presentation:*

A fundamental principle in Federal collateral review is that to be "fairly presented" the federal ground must be presented on the same factual and legal bases as presented to the state's highest court. See *Williams v. Bagley*, 380 F.3d 932, 969 (6th Cir. 2004); *Jacobs. v. Mohr*, 265 F.3d 407, 415 (6th Cir. 2001); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000); *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).  Failure to fairly present the federal ground to the Ohio Supreme Court constitutes a procedural bar to federal habeas corpus review, and this bar is both an adequate and independent state procedural rule.  See *Williams v. Anderson*, 460 F.3d 789, 806

5

(6th Cir. 2006); *Lordi v. Ishee*, 384 F.3d 189, 194 (6th Cir. 2004), *cert. denied,* 546 U.S.821

(2005); *Leroy v. Marshall*, 757 F.2d 94, 99 (6th Cir. 1985); *Rust v. Zent*, 17 F.3d 155, 160 (6th

Cir. 1994). "Fair presentation of an issue requires that a petitioner give state courts a full

opportunity to resolve any constitutional issues by involving 'one complete round' of the state's

appellate review system." *Caver v. Straub*, 349 F.3d 340, 346 (6th Cir. 2003), quoting *O'Sullivan

v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct.1728, 144 L.Ed.2d 1 (1999)."General allegations of the

denial of rights to a 'fair trial' and 'due process' do not 'fairly present' claims that specific

constitutional rights were violated." *McMeans v. Brigano*  228 F.3d at 681. Likewise,

"[r]elatedness of the issues . . . does not save [petitioner's] claim." *Lott v. Coyle*, 261 F.3d 594, 607

(6th Cir. 2001), *cert. denied*, 534 U.S.1147 (2002).


Both the warden and Dr. Ahmed direct the court to his  judicial bias claim presented as

his Seventh Assignment of Error on direct appeal.( Answer, Respondent's Ex. 14, Brief of

Appellant pp. 42-49, ECF # 8-1 commencing at 215/707). [2] Dr. Ahmed alluded to one instance

where the court refused to allow questioning of Leslie Ford concerning a civil complaint filed

against Dr. Ahmed that had been dismissed prior to trial. (*Id.*, Brief p. 43).  However, the bias

claim presented to the appellate court was related to, but not the same as, Dr. Ahmed's first

ground.  Dr. Ahmed counters that the body of his briefing put the state appellate court on notice

---

[2]  The Seventh Assignment of Error reads:

The trial court committed repeated reversible error by demonstrating a fixed anticipatory judgment
and exhibiting a pervasive bias against Appellant in favor of the State.

6

that Federal claims were in issue. [3]   However, his seventh proposition of law contained numerous challenges to the trial court's rulings, all of which  alleged instances of bias in the trial court without any reliance on the U.S. Constitution.   Dr. Ahmed's argument that there was an implicit Federal Constitutional basis to his assignments of error is refuted by his argument in the state courts in his second Ohio R. App. P. 26(B) application to reopen appeal, which was that appellate counsel had been "deficient by not raising the aforesaid five proposed assignments of error in a federal constitutional context."  *State v. Ahmed,* 2008 WL 192151, at *2, 2008-Ohio-271 (Ohio App. 8 Dist.).

However, both the warden and Dr. Ahmed have presented fundamentally flawed arguments.  They have lost sight that the focus of fair presentation is the extent of the  claim presented to the state's **highest** court. See *Castille v. Peoples,* 489 U.S. 346, 351, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989).  On appeal to the Ohio Supreme Court Dr. Ahmed raised only two propositions of law:  first, that the Supreme Court should recognize "cumulative error;"  and second, that "The right to a fundamental fair trial, the right to call and confront witnesses, the right to have ones (*sic*) case heard by a Grand Jury with appropriate Jurisdiction are rights

---

[3]  Dr. Ahmed presumably is relying on well-established Federal law which allows latitude in the matter of "fair presentation."

In our Circuit, in making a determination of whether the petitioner has properly asserted both the factual and legal basis for his claim, there are four actions a petitioner can take which are significant to the determination of whether a claim has been "fairly presented:"

(1) reliance upon federal cases employing constitutional analysis;
(2) reliance upon state cases employing federal constitutional analysis;
(3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right;  or
(4) alleging facts well within the mainstream of constitutional law.

*Whiting v. Burt*, 395 F.3d 602, 612-13 (6th Cir. 2005); *McMeans v. Brigano*, 228 F.3d at 681; *Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir. 1987), *cert denied*, 532 U.S. 958 (2001).

protected by the Constitutions of the State of Ohio and the United States of America." (Answer, Respondent's Ex. 19, Memorandum in Support of Jurisdiction pp. I, 13, ECF #8-1 commencing at 429/707).   Under his cumulative error proposition,  Dr. Ahmed argued only that "Dr.  Ahmed was denied the right to call witnesses on his behalf and denied the right to effectively cross examine the witnesses of the State."   Alleged witness bias was not even mentioned.  The second proposition of law was more vague.  Dr. Ahmed's final request to the Ohio Supreme Court was for it to conduct "a thorough and independent review of the entire transcript." (*Id.*, Memorandum. p. 13).

Conceivably, Dr. Ahmed's request for cumulative error review and independent review of the transcript to the Ohio Supreme Court sought plain error review by that court. See *State v. Issa*, 93 Ohio St. 3d 49, 56, 752 N.E.2d 904, 915, 2001-Ohio-1290 (2001)("This court has long held that failure to raise an issue in the trial court or the court of appeals waives all but plain error in our review."). However, a vague denial of due process claim clearly was not "fair presentation." of inability to disclose to the jury that a witness held a potential financial interest in the matter.  See  *McMeans v. Brigano*  228 F.3d at 681. And even if it had been, the Supreme Court in *Castille* could not have been more clear- the submission of new claims on discretionary *review to the state's highest court is not fair presentation.* Castille, *489 U.S. at 351, 109 S.Ct. at* 1060.

B. *No Cause to Excuse Lack of Fair Presentation:*

Dr. Ahmed may overcome a procedural bar by a  demonstration of "cause" and

8

"prejudice" to excuse the failure to present a constitutional claim to the state's highest court, or alternatively by showing actual innocence.  See *Edwards v. Carpenter*, 529 U.S. 446, 451-52, 120 S.Ct. 1587, 1590-1592, 146 L.Ed.2d 518 (2000); *House v. Bell*, 547 U.S. 518, 536, 126 S.Ct. 2064, 2076, 165 L.Ed.1 (2006). Dr. Ahmed does not submit that he is actually innocent, but he does argue that this procedural default for failing to fairly present his first ground to the state's highest court as a Constitutionally based claim, was due to ineffective assistance of counsel on the direct appeal.   Ineffective assistance of appellate counsel may serve as cause to excuse a procedural default, but this claim must also have been presented in the state courts as an independent claim. See *Edwards v. Carpenter,* 529 U.S. at 452, 120 S.Ct. at 1591(quoting *Murray v. Carrier*, 477 U.S. 478, 489, 106 S.Ct. 2639, 91 L.Ed. 2d 397 (1986).


In his  second Ohio R. App. P. 26(B) application to reopen appeal filed on December 11, 2007, Dr. Ahmed presented a Constitutionally-based argument independent claim of ineffective assistance of appellate counsel.  ( See Motion to Reopen Appeal p. 4, filed Dec. 11, 2007, Respondent's Ex. 40, ECF #8-2, commencing 33/311).  This  application to reopen appeal was dismissed, however, on  state procedural grounds of untimeliness and *res judicata*. See *State v. Ahmed,*  2008 WL 192151, at *2, 2008-Ohio-217 (Ohio App. 8 Dist.).  An independent claim of ineffective assistance of counsel, is also subject to the same rule regarding procedural default.  If this claim is procedurally defaulted in the state courts, it cannot serve as "cause" to excuse another procedural default. *Scuba v. Brigano*, 527 F.3d 479, 487 (6th Cir. 2007), *cert. denied*, - U.S.-, 129 S.Ct. 269, 172 L.Ed. 2d 199 (2008)(citing *Edwards v. Carpenter*, 529 U.S. at 453, 120 S.Ct. at 1592);  *Franklin v. Anderson*, 434 F. 3d 412, 418 (6th Cir. 2006).

9

First, as a non-capital matter, Dr. Ahmed's failure to file his December 11, 2007 application to reopen appeal within 90 days of the June 27, 2005 appellate decision without good cause to excuse the delay, as required under Ohio R. App. P 26(B)(2)(b),is an adequate and independent state rule for the state courts to deny review and forecloses federal habeas review. *Parker v. Bagley*, 543 F.3d 859, 862 (6th Cir. 2008); *Scuba v. Brigano*, 527 F.3d at 488; *Monzo v. Edwards*, 281 F.3d 568, 577-78 (6th Cir. 2001).

Second, Dr. Ahmed was represented by new counsel before the Ohio Supreme Court, where he could have argued on direct appeal that he was ineffectively assisted by appellate counsel in the state district court of appeals. See *State v. Williams,*74 Ohio St.3d 454, 455, 659 N.E.2d 1253, 1254 (1996)(citing *State v. Murnahan,* 63 Ohio St.3d 60, 584 N.E.2d 1204 (1992)). Ohio's judicial  rule has been to dismiss a claim of ineffective assistance of appellate counsel as *res judicata* when it could have been presented earlier on direct appeal "unless, because of unusual circumstances, applying the doctrine of *res judicata* would be unjust." *State v. Williams*, 74 Ohio St.3d at 455, 659 N.E.2d at 1254 (1996); *State v. Hill*, 78 Ohio St.3d 174, 175, 677 N.E.2d 337, 338 (1997). "In Ohio, *res judicata* bars state courts from considering constitutional claims in post-conviction collateral attacks when those claims have already or could have been fully litigated on direct appeal." *Monzo v. Edwards*, 281 F.3d at 576; *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006). This is an adequate and independent state procedural rule. See *Eley v. Bagley,* 604 F.3d 958, 965 (6th Cir.2010); *Fautenberry v. Mitchell*, 515 F.3d 614, 633 (6th  Cir. 2008), *cert. denied*, - U.S.-, 129 S.Ct. 412, 172 L.Ed.2d 299 (2008); *Tolliver v. Sheets*, 594 F.3d 900, 923-30 (6th Cir. 2010)(ineffective assistance of counsel in filing a collateral motion or Ohio

10

R. App. P. 26(B) application to reopen did not serve as cause ).  Both untimely filing and *res judicata* satisfied the Sixth Circuit's *Maupin* standards for enforcing the state procedural default in Federal collateral review. See *Scuba*, 527 F.3d at 486-88 (untimely 26(B) application and res judicata); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001)(bypassing first opportunity to raise ineffective assistance of counsel). [4]  Consequently, Federal habeas corpus review of Dr. Ahmed's first claim is barred due to his failure to fairly present it as a Constitutionally based claim to the Ohio Supreme Court, and further defaulting on the alleged "cause" to excuse the prior default.

## II.  Ground Two- Prosecutorial Misconduct was not Prejudicial:

> **II.**  The State's introduction of evidence it knew to be false, and other prosecutorial misconduct, violated Petitioner's right to a fair trial, as protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

Under this ground Dr. Ahmed contends that the State offered the testimony of a witness, Stacey Peck-Dusman, whom it knew to be false.  Dr. Ahmed argues that this witness claimed that Dr. Ahmed, while conducting a medical examination at Southwest General Hospital had sexually assaulted her. However, it was beyond question that  Dr. Ahmed never worked at Southwest General Hospital, and another doctor had treated this witness. Dr. Ahmed contends that the prosecution knew these facts to be true, but put Ms. Peck-Dusman on the stand to lie under oath in her direct examination.

---

[4] "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.... Second, the court must decide whether the state courts actually enforced the state procedural sanction.... Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim...." *Eley v. Bagley,*  604 F.3d 958, 965 (6th Cir.2010)(quoting *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001)(quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

11

On direct appeal in the fifth assignment of error,  Dr. Ahmed maintained that the prosecutor committed reversible error when at trial the prosecutor cross-examined  Christina Kling a defense witness. (Answer, Respondents's Ex. 14, Brief of Appellant pp. 31-40, ECF # 8-1 commencing at 204/707) Ms. Kling was a nurse working at Southwest General Hospital, who on cross-examination was asked about whether Dr. Ahmed once had work privileges at that hospital, whether his work privileges were revoked in 1990 or 1991, and whether Dr. Ahmed's work privileges were revoked due to "sexual allegations." Her responses were "no" to the first two questions over defense counsel's objections, but defense counsel's objections were sustained regarding the question over prior sexual allegations.  Ms. Kling had not worked at Southwest General Hospital during the relevant time period, a fact known to the prosecutor, and she had faxed the prosecutor that hospital records did not show that Dr. Ahmed ever had privileges at that hospital.

At the ensuing side bar the prosecutor informed the trial court, "I'm going to have evidence to prove that fact, Your honor. I wouldn't ask the question if I didn't have the evidence to back it up."( Trial Tr. 3743). The prosecution also informed the trial court that it had information that documents existed which proved that Dr. Ahmed practiced at Southwest General Hospital, and his privileges were revoked but it could not produce the documents because of "what they call peer review." (Trial Tr. 3751-52).  Later in the trial the prosecution produced Stacey Peck-Dusman as a "rebuttal" witness.  She testified that she was treated by Dr. Ahmed at Southwest General Hospital, he was sexually inappropriate with her, and she filed charges against him which led to his hospital privileges being suspended. (Trial Tr. 4287-93).

12

Defense counsel produced Susan Ferrante, Southwest's administrator of risk management and safety services to testify about the fact that Dr. Ahmed never had hospital privileges at that institution. (Trial Tr. 4424-34).

Dr. Ahmed argued on this appeal that the trial court sustained the prosecution's objections to much of Ms. Kling's defense testimony, and as a result, part of her testimony was proffered for the record, since the trial court disallowed her from testifying about her response to the State's subpoena that a month earlier she had faxed a letter to the prosecutor, the same prosecutor who was now conducting the State's case, that Dr. Ahmed never had hospital privileges at Southwest General Hospital. (Trial Tr. 4452).

The state appellate court agreed that there had been prosecutorial misconduct, but found that the misconduct had not been prejudicial:

> {¶ 60} Although we agree that the State acted improperly in this line of questioning and that its reliance on the testimony of an alleged patient, Stacey Peck-Dusman, over the express representation of the hospital,FN6 amounted to prosecutorial misconduct, we cannot say that it deprived Dr. Ahmed of a fair trial. See *State v. Lott* (1990), 51 Ohio St.3d 160, 166, 555 N.E.2d 293 (a prosecutor's misconduct in making misleading comments and discussing matters unsupported by the record was not grounds for reversal where defendant failed to show prejudice). Here, defense counsel effectively rebutted any claim that Ahmed had privileges at the hospital through the testimony of Southwest Hospital employees, Susan Ferrante, Administrator of Risk Management and Safety Services, and Saundra Rodriguez, Administrator of Medical Staff Services. Both witnesses testified that Ahmed was never on staff at Southwest nor did he have privileges with the hospital. Ferrante further testified that Ahmed never treated Stacey Peck-Dusman nor did the hospital have any record of any complaints made by her concerning Ahmed. Accordingly, Peck-Dusman's testimony that Ahmed treated her in 1990 at Southwest Hospital and that she had reported his alleged mistreatment to the hospital was contradicted by both her medical records and the testimony of two hospital administrators.
>
> FN6. The record reveals that Southwest Hospital notified the State prior to trial that it had no record of Ahmed being a member of the medical staff. Although

13

this letter was not admitted as an exhibit, the trial court sealed the letter and made it part of the record on appeal.

* * * *

{¶ 62} When considering the impact of the prosecutor's statement in the context of the entire lengthy trial, we cannot say that Ahmed was denied a fair trial. First, any prejudice that would ordinarily be associated with such a misrepresentation was effectively cured by the defense's rebuttal witnesses. Second, the State's reliance on Peck-Dusman's testimony as corroborating evidence, without having any confirmation from Southwest Hospital or corresponding medical records, undermined the integrity of its case to the jury. Thus, the prosecutor's misconduct may have actually assisted the defense in demonstrating that the State acted rashly without properly investigating all the allegations against Ahmed. Accordingly, although we disapprove of the prosecutor's conduct, we find that it did not prejudice Ahmed as to deny a fair trial.

*State v. Ahmed,* 2005 WL 1406282, at *11-12, 2005-Ohio-2999 (Ohio App. 8 Dist.).

*Standards of Review:*

In habeas corpus review generally the district court is required to look to the last reasoned state court decision addressing the argument.  See *Ylst v. Nunnemaker*, 501 U.S. 797, 805, 111 S.Ct. 2590, 2595, 115 L.Ed.2d 706 (1991). Generally, this review is conducted under Congressionally circumscribed rules set out in §2254(d)(1) which allow the writ to be granted in situations where the state court decision is "contrary to" or "an unreasonable application" of "clearly established" Federal law as set forth by  the Supreme Court of the United States. See 28 U.S.C. §2254(d)(1). [5]  A state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Thaler v. Haynes,* -U.S.-, 130 S.Ct. 1171, 1174

---

[5]  28 U.S.C. §2254(d)(2) governs resolution of factual disputes where petitioner must prove that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

14

(2010)(quoting *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389

(2000); and see *Lockyer v. Andrade*, 538 U.S. 63, 73, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003).

An "unreasonable application" of clearly established law occurs when the state court identifies

the correct legal principle from the Supreme Court's decisions but unreasonably applies it to the

facts of the petitioner's case. See *Boykin v. Webb,* 541 F.3d 638, 642 (6th Cir. 2008)(citing

*Williams v. Taylor*, 529 U.S. 362, 407, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).


Finally, there is *de novo* review without the constraints imposed under 28 U.S.C.

§2254(d)(1) and (2). See *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003); *Howard v.

Bouchard,* 405 F.3d 459, 467 (6th Cir. 2005), *cert. denied*, 126 S.Ct. 1032 (2006); *Cristini v.

McKee,* 526 F.3d 888, 897 (6th Cir. 2008) and see *Wiggins v. Smith*, 539 U.S. 510, 534, 123 S.Ct.

2527, 2542, 156 L.Ed.2d 471 (2003). *De novo* review applies when the state court decision fails

to address the Federal claim (See *Maples v. Stegall*, 340 F.3d at 436), or when it does so

erroneously.  See *Magana v. Hofbauer,* 263 F.3d 542, 551 (6th Cir. 2001)(erroneous application

of Supreme Court precedents)(citing *Williams*, 529 U.S. at 396-98, 120 S.Ct. 1495 (Stevens, J.)

(majority opinion), and *Williams*, at 413-14, 120 S.Ct. 1495 (O'Connor, J.) (concurring opinion).

"Under such review, questions of law, including mixed questions of law and fact, are reviewed

*de novo*, and questions of fact are reviewed under the clear-error standard." *Montes v. Trombley,*

599 F.3d 490, 494 (6th Cir.2010)(citing *Brown v. Smith*, 551 F.3d 424, 430 (6th Cir.2008); *Cone

v. Bell*, -U.S.-, 129 S.Ct. 1769, 1784, 173 L.Ed.2d 701 (2009)).


The warden's arguments on this ground and the others are based on the mistaken

15

assumption that the state court decision is entitled to deferential review under §2254(d)(1) and (2).

This overlooks the fact that none of Dr. Ahmed's arguments in his direct appeal asserted Federal Constitutional violations. (See Answer, Respondent's Ex. 14, Brief of Appellant, ECF #8-1 commencing 159/707). In his briefing Dr. Ahmed did refer occasionally to Federal case law and state court decisions which applied Federal precedent. That was sufficient to satisfy "fair presentation" under Sixth Circuit case law. See *Whiting v. Burt*, 395 F.3d 602, 612-13 (6th Cir. 2005).  The state court decision, though,  must next take this cue and address the issues as matters of Federal Constitutional concern. That did not occur here.  Rather, the references to Federal law in the state court decision were indirect.  The state appellate court decision relied on  *State v. Lott,* 51 Ohio St.3d at166, 555 N.E.2d at 301 (1990), where the Ohio Supreme Court did quote *Smith v. Phillips,*, 455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78 (1982). However, the state appellate court decision itself did not directly refer to U.S. Supreme Court precedent, nor for that matter did the state court decision refer to the Fourteenth Amendment of the Federal Constitution. The state court decision addressed this constitutional claim under state law precepts.  When Federal Constitutional review in the state court decision is indirect, the Sixth Circuit is clear that the state court decision is not entitled to deferential review under §2254(d) for it lacks analysis of the Federal Constitutional claim. See *Danner v. Motley*, 448 F.3d 372, 376 (6th Cir. 2006);  *Benge v. Johnson*, 474 F.3d 236, 246 (6th Cir. 2007).


*De Novo Review:*

It is well-established that analysis of prosecutor misconduct has two parts.  The first part

16

is from "[a] long series of decisions of this Court . . .[which] had established the proposition that the 'Fourteenth Amendment cannot tolerate a state criminal conviction obtained by the knowing use of false evidence. (footnote omitted)'" *Donnelly v. DeChristoforo,* 416 U.S. 637, 646, 94 S.Ct. 1868, 1873 (1974)(quoting *Miller v. Pate,* 386 U.S. 1, 7, 87 S.Ct. 785, 788 (1967)). The Supreme Court has identified that the two instances of false evidence occur when the evidence used is "known to be such," and where the evidence is unsolicited in response to the State's question, but the State "allows it to go uncorrected." *Napue v. People of State of Ill.,* 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959). Dr. Ahmed has clearly established with the hospital administrator's testimonies both in court and as proffered that the prosecutor did know in advance that Ms. Peck-Dusman's testimony would be a lie. There was misconduct by the prosecutor.

The second part is whether the false evidence prejudiced the defendant. See *U.S. v. Bagley* 473 U.S. 667, 680 and n. 8 & 9, 105 S.Ct. 3375, 3382, 87 L.Ed.2d 481 (1985)(citing *Napue,* 360 U.S. at 269-71, 79 S.Ct. at 1177-1178). Under the "fair trial" standard, "'the prosecutorial misconduct must be "'of sufficient significance to result in the denial of the defendant's right to a fair trial.'" *Greer v. Miller,* 483 U.S. 756, 765, 107 S.Ct. 3102, 3109, 97 L.Ed.2d 618 (1987)(quoting *United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985) (quoting *United States v. Agurs,* 427 U.S. 97, 108, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976)). Phrased another way this issue is "whether the improper comments or actions 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Irick v. Bell,* 565 F.3d 315, 324 (6th Cir. 2009), *cert. denied,* - U.S. -, 130 S.Ct. 1504, 176 L.Ed.2d

118 (2010)(quoting *Slagle v. Bagley*, 457 F.3d 501, 515 (6th Cir.2006) (quoting *Darden v.
Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986)).

The conduct complained of  must be both improper and flagrant. *Boyle v. Million*, 201
F.3d 711, 717 (6ᵗʰ Cir. 2000); *Smith v. Mitchell*, 567 F.3d 246, 255 (6ᵗʰ Cir. 2009). Dr. Ahmed
contends that there had been reversible flagrant conduct on the prosecutor's part, relying on the
Sixth Circuit's decision in *Irick v. Bell,* 565 F.3d 315(6ᵗʰ Cir. 2009). That decision holds that
when there has been improper conduct, four factors are used to resolve the next element of
flagrancy:

> (1) whether the evidence against the defendant was strong; (2) whether the conduct
> of the prosecution tended to mislead the jury or prejudice the defendant; (3)
> whether the conduct or remarks were isolated or extensive; and (4) whether the
> remarks were made deliberately or accidentally.

*Irick,* 565 F.3d at 324 (quoting *Slagle v. Bagley*, 457 F.3d at 515 (citing *United States v. Carter*,
236 F.3d 777, 783 (6ᵗʰ Cir. 2001)). [6]

First, was the evidence against Dr. Ahmed Strong? The answer is clearly no. The jury
acquitted him of 30 of the 50 counts against him.  Second, did the conduct tend to mislead the

---

[6]  A similar formulation of the flagrancy standard circulating among Sixth Circuit decisions includes the
alternative four part standard for evaluating flagrant misconduct from *Angel v. Overberg*, 682 F.2d 605, 608 (6ᵗʰ Cir.
1982)(*en banc*):

> (1) the likelihood that the remarks of the prosecutor tended to mislead the jury or prejudice the
> defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were
> deliberately or accidentally made; and (4) the total strength of the evidence against the defendant.

*Goff v. Bagley*  601 F.3d 445, 480 (6ᵗʰ Cir. 2010); and see *Bowling v. Parker*, 344 F.3d 487, 512-13 (6ᵗʰ Cir. 2003);
*Boyle v. Million*, 201 F.3d 711, 717 (6ᵗʰ Cir. 2000).

18

jury?  Well, it was intended to do that, but it actually did not in the full context of the trial. Further, this was not an isolated incident but an orchestrated plan to present false evidence to establish that Dr. Ahmed was repeating his prior bad acts and to thereby corroborate the State's witnesses on this current course of bad conduct. Finally, the conduct was unmistakably deliberate. Dr. Ahmed argues that the prosecution's conduct met each element of this Sixth Circuit four part test.

The four-part test is applicable to *de novo* review. This four-part analysis provides no guidance for review under  §2254(d) for it will not aid in finding whether the state court decision was an "*objectively*" unreasonable application of clearly established Federal law or *contrary-to* clearly established Federal law.  This progeny of the test from *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982)(*en banc*)(See note 7), is a pre-Anti-Effective Death Penalty Act of 1996 relic from the days when the duties of the district court were not constrained by §2254(d)(1).

The ultimate question in this *de novo* review is whether the improper comments or actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Irick v. Bell,* 565 F.3d at 324. Obviously, it did not, as the number of acquittals shows.  It is clear from this record that Ms. Peck-Dusman's testimony was deflated by defense counsel's use of the testimony from Southwest General Hospital's administrators.  Dr. Ahmed has not demonstrated a likelihood of the jurors being misled or prejudiced. See *Goff v. Bagley*  601 F.3d 445, 480 (6th Cir. 2010)(using test from *Angel v. Overberg*, 682 F.2d at 608). There is no merit to this ground.

19

## III. Ground Three-  Juror Prejudice Claim was Meritless:

> **III.** The failure to sever charges of the indictment against Petitioner violated his rights to a fair trial, as protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

Dr. Ahmed contends that during *voir dire* numerous jurors including several of those seated stated that the volume of charges against the doctor created a presumption of guilt. In his second assignment of error on direct appeal, Dr. Ahmed argued that two jurors who had expressed their preconception of his guilt served as jurors after the trial court refused to remove them for cause. (Tr. 1104-07, 1186-88)(Brief of Appellant pp. 15-7, Respondent's  Ex. 14, ECF # 8-1 commencing at 188/707).   The state decision in one line responded to this argument with "Notably, the jury acquitted Ahmed of 30 of 50 counts in the indictment. Thus, the jury was obviously not overly influenced by the number of counts against him." *State v. Ahmed,* 2005 WL 1406282, at *5, 2005-Ohio-2999 (Ohio App. 8 Dist.).


At the time of the state appellate court decision, Federal law set out that  "[t]he constitutional standard of fairness requires that a defendant have 'a panel of impartial, 'indifferent' jurors.'" *Murphy v. Florida,* 421 U.S. 794, 799-800, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1975)(quoting *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961); and see *Rideau v. Louisiana*, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963); *Ristaino v. Ross*, 424 U.S. 589, 595, 96 S.Ct. 1017, 1021, 47 L.Ed.2d 258 (1976); *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). [7]  However, these Supreme Court precedents

---

[7] The applicable date for purposes of determining whether "Federal law" is "established" is either when the state-court conviction became final or the date of the state court decision. See *Smith v . Spisak,* -U.S.-,130 S.Ct. 676, 681 (2010)(citing *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (Stevens, J.) , with *id.*, at 412, 120 S.Ct. 1495 (O'Connor, J.) (applicable date is "the time of the relevant state-court decision")"

20

occurred in circumstances where the verdict corroborated the alleged juror predisposition.  The

Supreme Court has only very recently considered circumstances where the defendant was

partially acquitted. The Supreme Court found that the factor of partial acquittal was "of prime

significance" in refuting a presumption of juror bias. *See Skilling v. U.S.*, -U.S.-, 78 USLW 4735,

2010 WL 2518587, at * 16 ( 2010). [8]   The reasoning in the state court decision based on the large

number of acquittals was prescient.


        The substantial number of acquittals directs the outcome of *de novo* review of this claim.

Dr. Ahmed cannot establish prejudice as a result of the alleged juror predisposition given that

there is no presumption of prejudice given that he was acquitted on most of the charges.  He

offered nothing more than the responses of two jurors on *voir dire.* The trial record shows that

those members of the panel who harbored reservations on their ability to remain impartial were

removed for cause. (Trial Tr. 284, 777, 822). The two jurors who were seated over the doctor's

objections stated that despite their concerns, they were able to be fair and impartial and follow the

court's instruction. (Trial Tr. 1102-1104, 1181, 1185), and from the record they indeed did.


**IV. Ground Four- Petitioner Failed to Demonstrate Judicial Bias:**

---

        [8] "Finally, and of prime significance, Skilling's jury acquitted him of nine insider-trading counts. Similarly, earlier instituted Enron-related prosecutions yielded no overwhelming victory for the Government. In *Rideau, Estes*, and *Sheppard*, in marked contrast, the jury's verdict did not undermine in any way the supposition of juror bias. It would be odd for an appellate court to presume prejudice in a case in which jurors' actions run counter to that presumption. See, e.g., *United States v. Arzola-Amaya*, 867 F.2d 1504, 1514 (C.A.5 1989) ("The jury's ability to discern a failure of proof of guilt of some of the alleged crimes indicates a fair minded consideration of the issues and reinforces our belief and conclusion that the media coverage did not lead to the deprivation of [the] right to an impartial trial.").(footnote omitted)."

*Skilling v. U.S.,* -U.S.-, 78 USLW 4735, 2010 WL 2518587, at * 16 (U.S. 2010)

**IV.** The pervasive bias of the trial judge prevented the Petitioner from receiving a fair trial, as protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

Under this ground Dr. Ahmed contends that trial court rulings prevented him from presenting a defense and permitted the prosecution to present irrelevant and inadmissible evidence including expert testimony which had no purpose other than to impermissibly bolster the credibility of the State's witnesses.  Dr. Ahmed's quarrel is over the trial court's evidentiary rulings, and he has unsuccessfully attempted to augment this claim to a constitutional issue with mistaken reference to judicial bias. The general rule is that mere errors in the application of state rules on the admission or exclusion of evidence do not present a cognizable habeas claim. "A state court evidentiary ruling will be reviewed by a federal *habeas* court only if it were so fundamentally unfair as to violate the petitioner's due process rights. (emphasis in original)" *Frazier v. Huffman*, 343 F.3d 780, 789 (6th Cir. 2003)(quoting *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001).


Dr. Ahmed's argument under his seventh assignment of error on direct appeal was essentially a list of  grievances over the exclusion of Dr. Ahmed's evidence and the admission of the prosecution's evidence. (Brief of Appellant pp. 42-49, Respondent's  Ex. 14, ECF # 8-1 commencing at 215/707).  The state court decision found this claim procedurally defaulted because the matter of bias should have been presented in an affidavit of disqualification for prejudice pursuant to Ohio Rev. Code §2701.03. *State v. Ahmed,*  2005 WL 1406282, at *14. The state court decision also explained that "even if the trial court erred in some of its evidentiary rulings, that does not equate to bias. See *Okocha v. Fehrenbacher* (1995), 101 Ohio App.3d 309,

22

322, 655 N.E.2d 744 (a judge's rulings of law are not by themselves evidence of bias or

prejudice)." *Id.*

The warden does not defer to the state court decision, but requests dismissal based on

*Railey v. Webb*, 540 F.3d 393 (6th Cir. 2008), on the contention that there is no clearly established

Federal law on this matter. *Railey,* though, involved the peculiar circumstance of alleged bias

due to kinship between a judge and prosecutor.

Review of this claim of judicial bias *de novo*, leads to the conclusion that the warden gave

the state appellate court too little credit. Federal law on this topic of judicial bias is that "judicial

rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United*

*States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994)(citing *United States v.*

*Grinnell Corp*., 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966)). Rulings "are

grounds for appeal, not recusal." *Id.* Bias is a matter for recusal and the trial court's unfavorable

rulings fall far short of demonstrating bias.

**V. Argument against Retroactive Application of the Sentencing Changes created in State v.**
**Foster is Meritless:**

> **V**. The elimination of judicial decision of presumptions in favor of minimum
> sentences and against maximum or consecutive sentences as applied to Petitioner,
> who was convicted of crimes which allegedly occurred prior to the judicial
> decision, resulting in imposition of maximum and consecutive sentences, violates
> the proscription against ex post facto laws and the Fourteenth Amendment.

Dr. Ahmed argues that at the time the crimes were allegedly committed, Ohio's sentencing

law carried a statutory presumption favoring minimum concurrent sentences, but at resentencing

in 2006 those presumptions had been eliminated by judicial decision and he was no longer given their benefit. What Dr. Ahmed is complaining over is that on February 27, 2006, the Ohio Supreme Court in *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470, 2006 - Ohio - 856 (2006), *cert. denied*, 549 U.S. 979 (2006), re-evaluated the state's sentencing scheme in light of the holdings of the U.S. Supreme Court in *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and determined that Ohio's felony, sentencing plan is a "hybrid" of determinate and indeterminate sentencing, (*Foster*, 109 Ohio St.3d at 12). *Foster* severed the determinate aspects of the system. *Id.* at 17. Following the lead of state supreme court decisions in Indiana and New Jersey, (*Foster*, 109 Ohio St.3d at 27 n.98), the Ohio Supreme Court eviscerated § 2929.14(B)'s presumption in favor of a minimum term for offenders who had not served time in prison, and severed §2929.14(E)'s judicial fact-finding requirements prior to imposing consecutive sentences. *Id*. at 20. The Ohio Supreme Court struck down the statutory requirements that permitted judges to impose heightened sentences only after engaging in additional fact-finding found unconstitutional in *Blakely. Foster,* at 19-20, 25. Dr. Ahmed's grievance is that *Foster* made these changes applicable to all cases pending on appeal, which included his appeal. See *Id*., 109 Ohio St.3d at 31, 845 N.E.2d at 499.

The warden argues that this ground has been procedurally defaulted because it was presented initially to the Ohio Supreme Court, bypassing the state appellate court. The doctor counters that the warden has conceded that the procedural default has been excused by ineffective

24

assistance of counsel in the appeal.  However, it is unnecessary to explore these issues.   "[W]here the procedural default issue is 'complicated' and 'is unnecessary to [the] disposition of the case'". . . "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Mahdi v. Bagley,* 522 F.3d 631, 635 (6th Cir. 2008)(quoting *Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir.2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525, 117 S.Ct. 1517, 1523-24, 137 L.Ed.2d 771 (1997) (Restating that Constitutional reviews are generally to be avoided, but "[j]udicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law.")). The  procedural default argument is complex and it is more efficacious to resolve Dr. Ahmed's claims on their lack of merit rather than turn these squabbles into a prolix report.

The Sixth Circuit has weighed in on this issue in the habeas corpus setting finding that resentencing of Ohio criminal defendants pursuant to *State v. Foster*, did not raise *ex post facto* or due process concerns. See *Hooks v. Sheets*, 603 F.3d 316 (6th Cir. 2010).  Dr. Ahmed's arguments were addressed in *Hooks*, and consequently fail under *de novo* review.

## VI. Sufficient Evidence Supported Rape Convictions:

**VI**.  Petitioner's conviction of two (2) counts or rape were based upon wholly insufficient evidence as to constitute a violation of his right to due process of law as protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

At issue is the testimony of C.C. who when called as a witness by the defense testified that

the sexual conduct with the doctor was consensual. [9]  The state appellate court on direct appeal

found there was sufficient evidence supporting both rape convictions involving C.C. under Ohio

Rev. Code §2907.02(A)(1)(c)'s sexual conduct during substantial impairment in ability to resist

or consent:

> {¶ 41} Thus, a person's subjective belief that he or she was not raped does not defeat a rape conviction under this section when the evidence reveals that the person's ability to resist or consent was substantially impaired because of a mental or physical condition.

> {¶ 42} Ahmed claims that the State failed to prove that C.C .'s ability to resist or consent was substantially impaired. He argues that the State failed to produce any expert testimony on the issue and merely relied on C.C.'s testimony about her depression. Expert testimony, however, is not required to establish the element of "substantial impairment" due to a mental condition under R.C. 2907.02(A)(1)(c). *State v. Tate* (Oct. 26, 2000), Cuyahoga App. No. 77462, citing *State v. Zeh* (1987), 31 Ohio St.3d 99, 105, 509 N.E.2d 414. Rather, the element may be proven through the testimony of the victim and by allowing the trier of fact to make its own assessment of the victim's ability to either appraise or control her conduct. *Tate,* supra, citing *State v. Ferguson* (May 25, 2000), Franklin App. No. 99AP-819.

> {¶ 43} In the instant case, the State produced evidence that C.C. was Ahmed's patient for approximately four years and that she highly respected him. In addition to seeking gynecological care from Ahmed, she relied on him for psychological treatment. In early June 2002, Ahmed helped arrange for C.C. to be admitted to the hospital after she attempted suicide. The day after she was released from the hospital, she saw Ahmed at his Twinsburg office and scheduled a tubal ligation surgery. A week following the surgery, on June 17, 2002, C.C. returned to Ahmed's office for a postoperative visit, which included an internal exam.

> {¶ 44} C.C. testified that Ahmed began the internal exam, and while she was lying on the examining table with her feet in stirrups, "he just stopped" and "started to perform  oral sex." (Tr. 2841). While crying and in a state of shock, C.C. sat up, said "no," and asked Ahmed why he was doing this. He proceeded to lubricate his fingers with gel and placed them inside C.C. and began stimulating her. Still crying, C.C. told him that none of it felt

---

[9] The warden argues under the Sixth and Seventh grounds that the claim of insufficient evidence to support conviction,  is procedurally defaulted. (Answer p. 38, ECF # 8) However, these responses are concealed by the warden's bifurcation of the grounds into procedurally defaulted claims and merit review claims. The Sixth and Seventh grounds were included among the merit review claims where the warden quoted the full extent of the state appellate court's decisions on the issue of sufficiency of the evidence. Dr. Ahmed apparently was misled by the confusing argument presentation and did not respond to the warden's procedural default claim, but did address the warden's merit argument.  This lack of response to the procedural default issue  is justified due to confusing argument presentation and accordingly will be ignored.

"real." Next, Ahmed helped her off the table and onto his lap and eventually penetrated her vagina with his penis and climaxed.

{¶ 45} C.C. returned to see Ahmed approximately one week later. She testified that she wanted to ask him whether they really had sex or whether she had imagined it. She believed that the medication she was taking at that time might have made her delusional. In response to her question, Ahmed confirmed that they had sex during her previous appointment. In describing what happened next, C.C. testified:

> "I got down off the table and went to get my purse when he grabbed my arm. * * * He had his penis out and had me perform oral sex on him." (Tr. 2850).

{¶ 46} C.C. further testified that she was still suicidal from the first episode and that, after the second incident, she felt even more desperate.

{¶ 47} Following Ahmed's arrest in August 2002 on allegations of sexual misconduct involving another patient, C.C. contacted the police in September and reported the incidents. She also turned over the underwear that she had worn during the first incident, which the police later determined contained Ahmed's semen.

{¶ 48} In the spring of 2003, C.C. contacted Ahmed to discuss the situation. She testified that, in addition to needing closure and wanting to know why the incidents happened, she was concerned about Ahmed's well-being and did not want him to get in trouble. (Tr. 2859). In her conversation with Ahmed, he told her to retrieve her underwear from the police and to tell the police that she had placed his semen on her underwear.

{¶ 49} In answering the State's question as to whether the acts were consensual, C.C. responded: "I don't think so, no." She further explained:

> " * * * I didn't even have the right mind. I mean I was on a one track to suicide. I think I even asked him, well, how many pills did I need to take, because the first time I was just on coma watch the first few days, what did I need to do to make it final." (Tr. 2866).

{¶ 50} On cross-examination, C.C. admitted that, when she reported the incidents, she was unsure whether a crime had been committed. She further testified that she contacted the police and prosecution following her initial report and told them that she made a mistake by coming forward. She also admitted that she felt incredible pressure form(*sic*) the prosecutor to pursue the case. In response to defense counsel's questions regarding consent, she denied that it was consensual and denied telling defense counsel the same. (Tr. 2893).

{¶ 51} However, later in the trial, C.C. recanted this testimony and stated that the sexual acts were consensual on the basis that she believed that she "could have stopped it." (Tr.

27

4195). Although C.C. recanted her earlier testimony regarding consent, she consistently testified that she was suicidal and that her "mental outlook" was impaired. In response to the State's questions as to why she believed she could have stopped Ahmed, she indicated that "it didn't seem to matter." She also reiterated that she "didn't care about having sex" because she "intended on committing suicide the right way."

{¶ 52} In light of C.C.'s testimony concerning her mental state during both office visits, we find that there was sufficient evidence for the jury to find beyond a reasonable doubt that her ability to consent or resist was substantially impaired. Moreover, given the fact that Ahmed had been providing her with psychiatric treatment and was aware of her recent suicide attempt, the jury could have easily concluded that Ahmed was aware of C.C.'s mental condition. Thus, the trial court properly denied Ahmed's motion for acquittal on the rape counts.

{¶ 53} Similarly, we find that the convictions are supported by the weight of the evidence. C.C.'s testimony revealed that she was extremely vulnerable and distraught at the time of each incident. Moreover, testimony was offered that C.C. depended on Ahmed as her "lifeline." C.C.'s emotional dependence on Ahmed, coupled with her state of mind demonstrated that her judgment was substantially impaired. Ahmed was not only aware of her condition but he took advantage of it by engaging in sexual relations with C.C.

{¶ 54} We further note that C.C.'s later recantation that the acts were consensual does not negate the State's evidence that her ability to consent or resist was substantially impaired. On cross-examination by the State, C.C. acknowledged that she returned to Ahmed's office on June 25 to confirm whether they had sexual relations during the previous appointment. Due to her mental condition at the time, she was unsure whether she had imagined the sexual acts. She further reiterated her earlier testimony as to what happened during the June 17 visit, including the fact that she was crying, that her "mental outlook" was not right, and that nothing felt "real." In regard to the second visit, she testified that she was upset during the visit, that she was confused by Ahmed's actions, that she was still in a "dream state," and that she did not care that day whether she had sex with Ahmed because she "had every intention of committing suicide the right way." Furthermore, she reiterated that, although she returned to Ahmed's office, she did not want to have sexual relations. We find that this testimony, taken in its entirety, demonstrates that C.C.'s ability to consent or resist was substantially impaired.

{¶ 55} Moreover, her rebuttal testimony, relating to both incidents, was consistent with her earlier testimony on direct, although she later testified that she believed the sex was consensual because she could have stopped Ahmed. However, we find that her explanation as to why she believed she could have stopped Ahmed from performing the sexual acts further demonstrates her impaired judgment. C.C. testified that she did not stop Ahmed because "[i]t didn't seem to matter. And I needed the doctor." Considering this testimony in conjunction with her repeated statements that her "mental outlook was not right," that nothing seemed "real," and that she was suicidal, we cannot say that the jury clearly lost its way in finding that C.C.'s ability to consent or resist was substantially impaired due to her mental condition. Further, because it is undisputed that the sexual acts occurred, we find that the convictions are supported by the weight of the evidence.

28

(footnote omitted).

*State v. Ahmed,* 2005 WL 1406282, ¶¶ 40-55. [10]

The federal constitutional concept of sufficiency of the evidence springs from the

Fourteenth Amendment Due Process prohibition against conviction except upon proof of guilt

beyond a reasonable doubt.  See *Jackson v. Virginia,* 443 U.S. 307, 309-16, 99 S.Ct. 2781, 2783-

88, 61 L.Ed 2d 560 (1979)(citing *In re Winship*, 397 U.S. 358, 362-63, 90 S. Ct. 1068, 1071-72,

25 L.Ed.2d 368 (l970)). Due process mandates that the record evidence must reasonably support a

finding of guilt beyond a reasonable doubt under the standard "whether after viewing the

evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found

the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at

318-3l9, 99 S.Ct. at 2789 (emphasis in original); *Wright v. West*, 505 U.S. 277, 112 S.Ct. 2482,

120 L.Ed.2d 225, 237 (1992).  "[T]he *Jackson* inquiry does not focus on whether the trier of fact

made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision

to convict or acquit (emphasis in original)."  *Herrera v. Collins*, 506 U.S. 390, 402, 113 S.Ct.

853, 861, 122 L.Ed.2d 203 (1993).  Further, "'a reviewing court must consider all of the evidence

admitted by the trial court,' regardless whether that evidence was admitted erroneously."

*McDaniel v. Brown,* -U.S.-, 130 S.Ct. 665, 672 (2010)(quoting *Lockhart v. Nelson*, 488 U.S. 33,

41, 109 S.Ct. 285, 102 L. Ed.2d 265 (1988)).

---

[10]   The state trial court transcript was provided pursuant to 28 U.S.C. §2254(f) as required when there is a
challenge to the sufficiency of the evidence.  See *Nash v. Eberlin*, 437 F.3d. 519, 523 (6th Cir. 2006); *Adams v.
Holland*, 330 F.3d 398, 405-06 (6th Cir. 2003), *cert. denied* 541 U.S. 596 (2004).

29

Dr. Ahmed contends that the evidence was insufficient due to a complete lack of any testimony concerning any actual mental condition which C.C. might have had which impaired her ability to consent to sexual relations.  The state court decision addressed this same argument in ¶ 42 quoted above and explained that state law does not require testimony for "the element may be proven through the testimony of the victim and by allowing the trier of fact to make its own assessment of the victim's ability to either appraise or control her conduct."  C.C. testified that she was under Dr. Ahmed's care for her mental health and that she was suicidal.  The state court decision found "C.C.'s emotional dependence on Ahmed, coupled with her state of mind demonstrated that her judgment was substantially impaired. Ahmed was not only aware of her condition but he took advantage of it by engaging in sexual relations with C.C." *State v. Ahmed,* 2005 WL 1406282, ¶ 53.  However, under the *Jackson* standard, "a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown,* -U.S.-*,* 130 S.Ct. at 673 (quoting *Jackson*, 443 U.S. at 326, 99 S.Ct. at 2793.).  *De novo* review under the standard set forth in *Jackson* and its progeny leads to the conclusion that there was sufficient evidence supporting the rape convictions.

Dr. Ahmed further argues that the trial court's rulings prevented C.C. from testifying how she was misled by the State and the State's pressure on her to drop a civil case against Dr. Ahmed before she testified. (See Tr. 4183-93, 4223-25).  However, a sufficiency of the evidence claim is just that, a review of the evidence admitted. See *McDaniel v. Brown,* -U.S.-*,* 130 S.Ct. at 672.

There is no merit to Dr. Ahmed's arguments.

## VII. Sufficient Evidence Supported Sexual Battery Convictions:

**VII.** Petitioner's conviction of five (5) counts of sexual battery were based upon such wholly insufficient evidence as to constitute a violation of his right to due process of law, as protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

Dr. Ahmed argues that sexual battery requires sexual conduct and a gynecologist conducting a pelvic examination is privileged to insert "portions of his body" or instruments into the vaginal cavity of his patients. [11]  Again, the warden's procedural default argument will be ignored due to its confusing presentation.

The state appellate court addressed this argument concluding that there was sufficient evidence of the crimes of sexual battery despite the circumstances of gynecological examination. The state court decision found that the doctor had "exceeded the boundaries of providing medical treatment." *State v. Ahmed*, 2005 WL 1406282, ¶ 96. The decision pointed to evidence that the doctor digitally lubricated his patients "naturally," it was medically unnecessary to touch the clitoris during examination, the doctor had a penile erection during examination , the doctor digitally stimulated his patients to orgasm, the doctor caressed a patient's nipples, the doctor made sexually provocative remarks, and the patients testified that the doctor's action felt "sexual." *Id.*, at ¶¶ 97-100.

---

[11]  By portions of his body presumably the doctor is referring to his fingers.

The evidence supports the findings that Dr. Ahmed did penetrate the vaginal cavities of his patients  with instruments and digitally, so there was "sexual conduct" as statutorily defined. The jury determined that there was no "privilege" to do so, and Dr. Ahmed does not refute the jury's implicit conclusion that the scope of the examination exceeded "privilege, " that is the "license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." See Ohio Rev. Code §2901.01(A)(12).   The evidence presented at trial supported this finding.  *De novo* review under the *Jackson* standard establishes that the evidence was sufficient to support the convictions. Dr. Ahmed's other arguments essentially go to questions of policy, and that is certainly beyond the scope of a sufficiency of the evidence claim.

## VIII. Prosecutorial Misconduct Claim is Meritless:

> **VIII.** Petitioner's rights to due process of law, as protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, were violated by the State's failure to provide exculpatory evidence to the defense.

Dr. Ahmed claims that his due process rights under *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), were violated in three instances: (1) the State failed to disclose  a "deal" to dismiss pending criminal charges  against a complaining witness "S.T."; (2) the State failed to disclose that complaining witness "C.C." had made statements to her physician that her sexual relationship with Dr. Ahmed had been consensual; and (3) the State failed to disclose Stacey Peck-Dusman's statements indicating her belief that Dr. Ahmed was not the doctor who had examined her in 1990 and the attempt of the police to persuade Ms. Peck-Dusman to testify against Dr. Ahmed.  He states that these issues were raised in a petition for post-

32

conviction relief and motion for leave to file delayed appeal on March 21, 2009. (See Ex. 51-53, ECF # 8-3). The warden states that these matters were denied by the state trial court on May 21, 2009, and argues that this claim is procedurally defaulted. Dr. Ahmed counters with the court's journal entries vacating the May 21, 2009 order and setting these matters for hearing on October 9, 2009, and resetting it for January 14, 2010. (Traverse Ex. A, B, & C, ECF # 13-1). Review of the docket in CR-03-437437-ZA shows that Dr. Ahmed has sought continuances of this hearing again as recently as July 21, 2010 to continue the hearing set in Common Pleas Court  for July 28, 2010.

Since there is no state court decision on these matter, *de novo* review applies. See  *Maples v. Stegall*, 340 F.3d at 436 ; *Cristini v. McKee,* 526 F.3d at 897.


There is no question that due process required the State to disclose exculpatory evidence. See *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).  However, Dr. Ahmed maintains that this ground is unexhausted, and despite the denials of a stay of the Federal habeas corpus case, he has  not dismissed this claim of his own accord, and further his motions to continue the hearing in state court have delayed the resolution of these matters there. Nonetheless, 28 U.S.C. § 2254(b)(2) "gives the district court the alternative of simply denying a petition containing unexhausted but nonmeritorious claims."  *Duncan v. Walker*, 533 U.S. 167, 183, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001)(Stevens, J., concurring); *Palmer v. Carlton*, 276 F.3d 777, 780 (6th Cir.2002).


*Elements of a Due Process violation under Brady:*

33

*Brady*, and its progeny *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87

L.Ed.2d 481 (1985) and *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995),

set out the State's duty under Fourteenth Amendment due process to disclose evidence that is

both favorable to the accused and material to guilt or punishment. This encompasses evidence

that is either exculpatory or could serve to impeach. *Bagley*, 473 U.S. at 676. There are three

elements to such claims: (1), the evidence at issue must be favorable to the accused either because

it is impeaching or exculpatory: (2), the evidence must have been suppressed either willfully or

inadvertently; and,  (3) prejudice must have ensued to cause a material breach of due process. See

*Banks v. Dretke*, 540 U.S. 668, 691, 124 S.Ct.  1256, 1272, 157 L.Ed.2d 1166 (2004)(quoting

*Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

Demonstrating prejudice requires the defendant to show that the suppressed favorable evidence at

issue is material." *Johnson v. Bell*  525 F.3d 466, 475 n.4 (6th Cir. 2008), *cert. denied*, 129 S.Ct.

2427 (2009)(citing *Strickler*, 527 U.S. at 282, 119 S.Ct. 1936).  Evidence is material 'if there is a

reasonable probability that, had the evidence been disclosed to the defense, the result of the

proceeding would have been different."  *Kyles v. Whitley*, 514 U.S. at 433-34 (quoting *Bagley*,

473 U.S. at 682); *Youngblood v. West Virginia*, 547 U.S. 867, 870, 126 S.Ct. 2188, 2190, 165

L.Ed.2d. 269 (2006). Dr. Ahmed is not required to show that he would have been acquitted. The

third element is not a sufficiency of the evidence test. See *Johnson v. Bell*, 525 F.3d at 475.

Prejudice or materiality exists only where there is:

> a "reasonable probability" of a different result, and the adjective is important. The
> question is not whether the defendant would more likely than not have received a
> different verdict with the evidence, but whether in its absence he received a fair
> trial, understood as a trial resulting in a verdict worthy of confidence.
> *Kyles*, 514 U.S. at 434, 115 S.Ct. 1555. Therefore, "favorable evidence is subject
> to constitutionally mandated disclosure when it 'could reasonably be taken to put

the whole case in such a different light as to undermine confidence in the verdict.' " *Cone v. Bell*, --- U.S. ----, ----, 129 S.Ct. 1769, 1783, 173 L.Ed.2d 701 (2009) (quoting *Kyles*, 514 U.S. at 435, 115 S.Ct. 1555).

*Robinson v. Mills,* 592 F.3d 730, 735 (6th Cir. 2010).

**"S.T."**

S.T. was the complaining witness in counts 18 and 19 of the indictment charging sexual imposition and sexual battery, respectively. (Indictment, Ex. 1 p. 5, ECF # 8-1, commencing 5/707).  She was identified as "Jane Doe Number 11." (Tr. 2484).  The doctor took no appeal from this sexual imposition conviction which resulted in a $500 fine, and in fact did not appeal any of these convictions, all of which resulted in the same penalty.  (Journal Entry Ex. 11, ECF # 8-1, commencing 133/707).

Dr. Ahmed argues that the State dismissed an eight count indictment against S.T. for receiving stolen property, without prejudice, so S.T. would not have a criminal record when she testified against Dr. Ahmed at his trial.  Dr. Ahmed contends that these felony counts remained "hanging" over her, however, to ensure that S.T.  would be a "forceful witness."  The State of Ohio, however, maintains that these charges were dismissed because S.T. had been the victim of identity theft. (Brief in Opposition, Ex. 52, ECF # 8-3, commencing 199/228).  Presuming such an arrangement existed, it would run counter to *Giglio v. U.S.*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).  *Giglio* held that an express agreement for favorable treatment  between the prosecution and a witness is potential impeachment material. See also *Carter v. Mitchell,*  443 F.3d 517, 535 (6th Cir. 2006)(citing *Giglio v. United States*, 405 U.S. at 153-54; *Napue v. Illinois*,

360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959))( "It was well-established at the time of . . . trial that a defendant's right to a fair trial may be violated where the prosecution deliberately misleads a jury or allows misleading testimony to go uncorrected with respect to any promise offered to a key prosecution witness in exchange for his testimony."). This misconduct principle has been extended to "less formal, unwritten or tacit agreement" including implied agreements. See *Bell v. Bell*, 512 F.3d 223, 233 (6th Cir. 2008). Also, there is imputed knowledge between prosecuting attorneys within the same office. See *Giglio v. U.S.,* 405 U.S. at 154, 92 S.Ct. at 766 ("A promise made by one attorney must be attributed, for these purposes, to the Government." (citing Restatement (Second) of Agency §272)); but compare *Goff v. Bagley*, 601 F.3d 445, 476 (6th Cir. 2010)(Knowledge of promise of leniency by U.S. Attorney not imputed to state prosecutor).

Dr. Ahmed's exhibits include what is purportedly bank photographs of S.T.,yet the affidavit of Robert Friedman does not  eliminate identity theft.  (See Ex. 51, Motion, Ex. 6, ECF # 8-3, 70/228).  Affiant Robert Friedman states "Affiant further states that Detective Clar further advised that he was responsible for presenting the case to the Cuyahoga County Grand Jury and would not have done so if there had not been a positive identification of [S.T.]." (See Ex. 51, Motion, Ex. Friedman Aff., Ex. 1 ¶ 25, ECF # 8-3, 36/228).  No one states, though, that the woman in the bank surveillance photographs was the same woman who appeared in court on the criminal charges, and that individual was the same woman who testified at Dr. Ahmed's criminal trial.

Second, the situation which the doctor attempts to infer of prosecutorial skullduggery is incredulous. S.T. after all was Jane Doe No. 11, whose sexual battery and sexual imposition counts were merely 2 of over 40 others. Dr. Ahmed cannot show that she was a key witness. Compare *Carter v. Mitchell,* 443 F.3d at 535 (promise offered to key prosecution witness).

**"C.C."**

This complaining witness, C.C., was pivotal to Dr. Ahmed's conviction on two rape counts and two related sexual battery convictions. Dr. Ahmed contends that days prior to her testimony for the State, C.C. had told her physician that her sexual relationship with Dr. Ahmed was consensual, and the State failed to disclose to defense counsel this exculpatory statement. However, the lack of that disclosure was not material since C.C. herself had testified at Dr. Ahmed's trial that she had consensual sexual relations with Dr. Ahmed. Again, evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. at 433-34. This evidence would have been only redundant. C.C.'s testimony about consensual acts, was addressed on appeal under Dr. Ahmed's sufficiency of the evidence argument.

Further, the medical records concerning the doctor's sexual conduct with C.C. were admittedly discovered by former criminal trial defense counsel, Mr. Richard Haber, who received them through civil litigation. (See Ex. 51, Motion for Leave to File Delayed Motion for New Trial, Robert E. Friedman Aff., Ex. 13,¶10, ECF# 8-3, commencing 86/228). Critically, the doctor fails to establish that these medical records obtained by Mr. Haber from the hospital were

also in the State's possession. "'*Brady* clearly does not impose an affirmative duty upon the government to take action to discover information which it does not possess.' " *Goff v. Bagley,* 601 F.3d 445, 476 (6th Cir. 2010)(quoting *United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007)).

**Stacey Peck-Dusman.**

Dr. Ahmed contends that the State failed to disclose Ms. Peck-Dusman's statements indicating she  believed that Dr. Ahmed was not the doctor who had examined her in 1990 and failed to disclose the State's efforts to persuade her to testify.   Dr. Ahmed provides the affidavit of Robert Friedman dated March 29, 2009, in which Friedman states that he spoke with Peck-Dusman and she told him that the Parma Police Officers who transported her to the Cuyahoga County Justice Center to testify assured and convinced her that Dr. Ahmed was the person who examined her in 1990, despite her doubts. (Ex. 51, Motion, Friedman Aff. ¶ ¶ 10-11, Ex. 17, ECF # 8-3, 166/228).

Ms. Peck-Dusman had demonstrated her lack of veracity and there is no corroboration whether she had in fact been transported by the Parma Police to Dr. Ahmed's trial.  Assuming that Dr. Ahmed could present a credible case of witness tampering by the Parma Police, it would not be material.

The undersigned previously addressed a similar challenge finding no merit based on the overpowering evidence from the testimony from Ms. Ferrante, which overcame prejudice due to

38

prosecutorial misconduct. And see *Ahmed*, 2005 WL 1406282, ¶¶59-62. This new evidence of

alleged witness tampering springs from the same allegations of prosecutorial misconduct and is

essentially a variant on the same claim. Ms. Peck-Dusman was not uncertain at trial and new

evidence of her uncertainty would not "put the whole case in such a different light as to

undermine confidence in the verdict." *Youngblood*, 547 U.S. at 870.


## IX. Conclusion and Recommendation:

Following *de novo* review of the petition and applicable law, petitioner, Azzam Ahmed, has

not demonstrated that he is in custody as a result of Federal Constitutional error which had a

substantial and injurious effect or influence on the jury's verdict. See *O'Neal v. McAnich*, 513

U.S. 432, 438-39, 115 S.Ct. 992, 995-96, 130 L.Ed.2d 947 (1995); *Brecht v. Abrahamson*, 507

U.S. 619, 638, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). There has been no demonstrated need for

an evidentiary hearing. It is recommended that this application for habeas corpus be denied and

dismissed in its entirety. (See ECF #1).


Dated: August 4, 2010         <u>       s/James S. Gallas       </u>
                                  United States Magistrate Judge


*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court

within fourteen (14) days of mailing of this notice. Failure to file objections within the specified

time WAIVES the right to appeal the Magistrate Judge's recommendation. *See*, *United States v.*

*Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).