PEARSON, J.

FILED

2012 SEP 30  AM 10: 09

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
YOUNGSTOWN

|  |  |  |
|---|---|---|
| AZZAM AHMED, | ) | |
| | ) | CASE NO. 1:09CV00624 |
| Petitioner, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | ORDER ADOPTING, IN PART, AND |
| RICHARD HALL, | ) | DENYING, IN PART, THE |
| | ) | MAGISTRATE JUDGE'S REPORT AND |
| Respondent. | ) | RECOMMENDATION AND |
| | ) | GRANTING THE PETITION FOR |
| | ) | HABEAS CORPUS (Resolving ECF Nos. |
| | ) | 1 and 15) |

## I. **Introduction**

Before the Court is the Report and Recommendation (ECF No. 15) filed by Magistrate

Judge James S. Gallas recommending that the Court deny Petitioner Azzam Ahmed's Petition for

Writ of Habeas Corpus (ECF No. 1) in its entirety.  Ahmed has filed objections.  ECF No. 18.

After reviewing the parties' written submissions, the State court's record, and applicable case

law, the Court concludes that the requested writ should be granted with respect to Ground Three–

Ahmed's claim of Misjoinder and Jury Bias.  On all other issues, the Court adopts the Magistrate

Judge Report and Recommendation.  The Court's reasoning is provided below.

## II. **Standard of Review**

The standard of review used by the Court in examining a Report and Recommendation is

set forth in 28 U.S.C. § 636.  The Court "shall make a *de novo* determination of those portions of

the report or specified proposed findings or recommendations to which objection is made."  *Id.* §

(1:09cv00624)

636(b)(1)(C).  The Court "may accept, reject or modify, in whole or in part, the findings or

recommendations made by the magistrate judge."  *Id.*

Habeas review is governed by Chapter 153 of the Antiterrorism and Effective Death

Penalty Act ("AEDPA") of 1996.  Under the AEDPA,

> (d) An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254.

Fairly recently, the United States Supreme Court interpreted the AEDPA provisions

regarding a State court decision that is "contrary to" or an "unreasonable application of" clearly

established federal law.  *See Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d

389 (2000).  In *Williams,* the Court determined that under the "contrary to" clause, a federal

habeas court may grant a writ of habeas corpus if the State court arrives at a conclusion opposite

to that reached by the Supreme Court on a question of law, or if the State court decides a case

differently than the Supreme Court on a set of materially indistinguishable facts.  *Id.* at 405.

Under this standard, an unreasonable application is an objectively unreasonable application of the

2

(1:09cv00624)

federal law set forth in decisions of the United States Supreme Court.  A State court's ruling

violates the "unreasonable application" clause "if the [S]tate court identifies the correct

governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of

the particular state prisoner's case." *Id.* at 407.  An unreasonable application can also occur

when "the [S]tate court either unreasonably extends a legal principle from [Supreme Court]

precedent to a new context where it should not apply or unreasonably refuses to extend that

principle to a new context where it should apply." *Id.*  Unreasonableness is an objective

standard; that another court has applied the law in the same manner is not dispositive.  *Id.* at

409-10.  "Unreasonable" is distinct from "incorrect;" even if a State court incorrectly applies a

rule of law, that error will not warrant habeas relief unless the application was objectively

unreasonable.  *Mitchell v. Esparza*, 540 U.S. 12, 18, 124 S. Ct. 7, 157 L. Ed. 2d 263 (2003).

Even when the State court decision does not specifically cite to relevant federal case law,

the deferential AEDPA review standard applies.  *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362,

154 L. Ed. 2d 263 (2002) (holding that the State court is not required to cite United States

Supreme Court cases, or even be aware of them, to be entitled to AEDPA deference, "so long as

neither the reasoning nor the result of the state-court decision contradicts them").  The deferential

standard of the AEDPA does not apply, however, when the State court has not adjudicated the

merits of the particular claim.  *Clinkscale v. Carter*, 375 F.3d 430, 436 (6th Cir. 2004) (citing

*Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003) ("Where as here, the [S]tate court did not

assess the merits of a claim properly raised in a habeas petition, the deference due under AEDPA

(1:09cv00624)

does not apply.") (citing *Wiggins v. Smith*, 539 U.S. 510, 537-38 (2003)).  In that instance, the claim is reviewed *de novo*.  *Id.*

To the extent that a habeas petitioner challenges the factual findings of the State court, § 2254(e)(1) provides that the "determination of a factual issue by a State court shall be presumed to be correct" and that "[t]he [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

The Court applies these standards below.

### III.  Background

Ahmed, a licensed obstetrician and gynecologist, was charged with fifty-three offenses involving thirty-seven patients: twenty-seven counts of sexual imposition, twenty-four counts of sexual battery, and two counts of rape.  ECF No. 8 at 2.  The case proceeded to trial in January of 2004, with the prosecution dismissing three counts of sexual imposition during trial.  On February 11, 2004, the jury convicted Ahmed of eleven counts of sexual imposition, two sexual battery counts, two rape counts, and five counts of sexual battery.  On February 18, 2004, he was sentenced to consecutive terms totaling forty-five (45) years of incarceration and later re-sentenced, on May 23, 2006, to the same aggregate term.  ECF No. 15 at 1. Continuing to the present, Ahmed, through counsel, has engaged in numerous State and federal procedures to overturn these convictions or to reduce his sentence.  Through counsel, Ahmed timely filed the instant petition.

On March 21, 2009, with the assistance of counsel, Ahmed filed a petition under 28 U.S.C. §2254 for habeas corpus review, alleging eight grounds for relief.  ECF No. 1.  The matter

4

(1:09cv00624)

was referred to Magistrate Judge James S. Gallas (now retired) who issued a report

recommending that Ahmed's petition be denied and dismissed in its entirety.  ECF No. 15.

Ahmed timely filed objections.  ECF No. 18.  The Court discusses each of Ahmed's objections

below.

### IV.  <u>Discussion</u>

#### A.     **Ground One[1] – Restriction of Cross-Examination**

In Ground One, Ahmed alleges that the State trial court's rulings prevented him from

informing the jury that several of the complaining witnesses in the criminal trial were former

patients whom had filed civil lawsuits against Ahmed for monetary damages.  ECF No. 15 at 4.

The Magistrate Judge rejected this claim on the basis that it had not been "fairly presented" to the

State courts and, therefore, was procedurally defaulted.  ECF No. 15 at 4-10.  Ahmed submits

that this determination is in error.  ECF No. 18 at 4-8.  The Court disagrees.

The Magistrate Judge correctly determined that the instant claim was not raised in the

State appellate courts.  The Magistrate Judge noted that, while Ahmed points the Court to his

seventh assignment of error on direct appeal as proof that the instant claim was presented to the

State Appellate Court, the seventh assignment of error was related to, but not the same as Ground

One presented in the instant petition.  Ahmed's seventh assignment of error contained numerous

challenges to the trial court's rulings, all of which alleged instances of bias in the trial court

without any reliance upon the United States Constitution.  ECF No. 15 at 6.  Additionally,

Ahmed's appeal to the Supreme Court of Ohio did not mention witness bias.  ECF Nos. 15 at 7;

---

[1]  The use of "Grounds" in this writing refers to the "Grounds for Petition" Ahmed relied
upon in his petition and the subsequent related pleadings.

(1:09cv00624)

8-1 at 443-44.  The Magistrate Judge concluded that Ahmed's vague allegations to the State

Supreme Court did not constitute "'fair presentation' [to the State court] of inability to disclose

to the jury that the witness held a potential financial interest in the matter."  ECF No. 15 at 7.

Minimally, Ahmed failed to present the legal underpinnings of Ground One to the Ohio

Court of Appeals.  Although Ahmed arguably presented his "Ground One"claim to the Ohio

Supreme Court in terms of constitutional law, he did not present it in that way during his direct

appeal.  See Castille v. Peoples, 489 U.S. 346, 351 (1989) (presentation of an issue for the first

time on discretionary review to the State Supreme Court does not fulfill the requirement of "fair

representation.").  Ahmed's objection to Ground One is, therefore, overruled.

### B.    Ground Two – Prosecutorial Misconduct

In Ground Two, Ahmed contends that the State engaged in prosecutorial misconduct by

offering testimony of a witness, Stacey Peck-Dunsman, that it knew to be false and by attempting

to inject into the trial evidence related to that false testimony.  Although Ahmed contends that the

Magistrate Judge correctly concluded that the prosecutor had indeed engaged in misconduct, he

avers that the Magistrate Judge incorrectly concluded that Ahmed is not entitled to relief because

the conduct was not flagrant.  ECF No. 18 at 8-9.

As the Report and Recommendation recites, the test for determining whether the

prosecutor's conduct was sufficiently flagrant to warrant relief is set forth in Irick v. Bell, 565

F.3d 315, 324 (6th Cir. 2009), which focuses on four factors:

> (1) whether the evidence against the defendant was strong; (2) whether the
> conduct of the prosecution tended to mislead the jury or prejudice the defendant;
> (3) whether the conduct or remarks were isolated or extensive; and (4) whether the
> remarks were made deliberately or accidentally.

(1:09cv00624)

*Id.*

      In applying that test to the instant case, the Magistrate Judge concluded that the conduct was not an isolated occurrence and that the remarks were made deliberately, which are both findings in favor of a flagrancy finding.  ECF No. 15 at 17-18.  While the Magistrate Judge also reasoned that the evidence against Ahmed was not strong based upon Ahmed's high acquittal rate, he ultimately concluded that the comments were not flagrant in light of his conclusion that the conduct neither misled the jury nor prejudiced Ahmed.  ECF No. 15 at 17-18.

      Ahmed takes issue with the Magistrate Judge's determination that Ahmed was not prejudiced and that the Magistrate Judge reached this conclusion by pointing to Ahmed's high acquittal rate.  Ahmed states:

> The logical problem with this argument is self-evident:  it assumes that because the jury acquitted Petitioner Ahmed of some of the counts, it could not have been misled or prejudiced, ignoring the possibility that had the prosecutor not knowingly presented false testimony, the jury might have acquitted Petitioner Ahmed on all of the counts.

ECF No. 18 at 9-10.

      Ahmed mischaracterizes the Magistrate Judge's findings.  The Magistrate Judge concluded that Ahmed was not prejudiced by the alleged misconduct, *i.e.* the "false testimony" and related comments concerning witness Stacey Peck-Dunsman, primarily because Defense counsel was able to present testimony that mitigated the misconduct.[2]  *See Slagle v. Bagley*, 457 F.3d 501, 524 (6th Cir. 2006) (finding conduct was minimally prejudicial, when Defense counsel helped to mitigate the prejudice by objecting to comments).  The Magistrate Judge stressed the

---

    [2] ECF No. 15 at 18.

(1:09cv00624)

high acquittal rate to indicate the possibility that the State's misconduct actually helped the Defense and did not hurt Ahmed as he alleges.  *See* *United States v. Mongham*, 356 Fed. Appx. 831, 837 (6th Cir. 2009) (finding that the prosecutor's remarks did not mislead or prejudice the defendant, while considering the fact that the defendant was acquitted of a charge).  The State Appellate Court noted the same, stating "that any prejudice that would ordinarily be associated with such a misrepresentation was effectively cured by the defense's rebuttal witnesses [and] the State's reliance on Peck-Dunsman's testimony as corroborating evidence . . . undermined the integrity of its case to the jury.  Thus, the prosecutor's misconduct may have actually assisted the defense . . . ."  ECF No. 8-1 at 401.

The Court finds unavailing Ahmed's argument that the Magistrate Judge's finding ignores the possibility that, had the prosecutor not engaged in the alleged misconduct, the jury might have acquitted Ahmed of all counts.  Such a possibility is not supported by the record. The evidence in support of the charges on which Ahmed was convicted was strong.[3] Furthermore, Peck-Dunsman was one of fifty seven witnesses.  Her testimony about the way Ahmed assaulted her breasts was consistent with that of six other witnesses who testified to being sexually assaulted by Ahmed.  Similarly, her testimony of sexual assault with a vaginal probe was similar to that of another witness as well.  ECF No. 8-1 at 318-20.  Without weighing

---

[3]  The Court does not approve of the Magistrate Judge's use of Ahmed's acquittal rate to judge the weight or sufficiency of the evidence.  ECF No. 15 at 17.  It is well established that it is not appropriate to rely upon an acquittal rate when analyzing the "whether the evidence against the defendant was strong" factor.  Rather, the Court is tasked with analyzing the evidence that establishes a Petitioner's guilt, *i.e.* evidence supporting the charges petitioner was found guilty of.  An acquittal rate does not necessarily speak to this objective.  *See* *Hawkins v. Coyle*, 547 F.3d 540, 553 (6th Cir. 2008) (applying the same standard given above and analyzing whether the overall case establishing Petitioner's guilt was strong).

(1:09cv00624)

the evidence or judging the credibility of the witnesses, the record shows that Ahmed has not met

his burden of demonstrating that the "prosecutor's misconduct was so flagrant and egregious as

to render the entire trial fundamentally unfair." *See Johnson v. Bagley*, 544 F.3d 592, 597 (6th

Cir. 2008). His objection is, therefore, overruled.

### C.     Ground Three – Failure to Sever ("Misjoinder") and Jury Bias

In Ground Three, Ahmed contends that "[t]he failure to sever charges of the indictment

against [him] violated his rights to a fair trial, as protected by the Due Process Clause of the

Fourteenth Amendment." ECF No. 1 at 6.

In support of his ground for relief, Ahmed presents an underlying claim of jury bias. He

contends that the large number of charges vitiated the presumption of innocence to which he was

entitled and created a presumption of guilt in the minds of the jurors, as evidenced by the jurors'

answers given during *voir dire*. ECF Nos. 1 at 6; 12 at 25; 18 at 12.

Ahmed's brief on direct appeal to the State court highlights portions of the trial transcript

illustrating that "[n]umerous prospective jurors volunteered that they believed that the sheer

volume of the counts alleged against [Ahmed] indicated to them that he was most likely guilty, of

at least some of the counts." ECF No. 8-1 at 188. Of special significance, is Ahmed's allegation

that "[t]wo of these individuals [Jurors JZ and UR] wound up serving as jurors after the trial

court refused to remove them for cause." ECF No. 8-1 at 188.

After conducting a *de novo* review of Ground Three,[4] the Magistrate Judge concluded that

---

[4] Respondent concedes that the State court decision did not address Ahmed's claim that
two of the jurors, who were eventually seated, were biased against him:

The state court decision did not address Ahmed's claim that two of the jurors who

(1:09cv00624)

Ahmed was not entitled to habeas relief, and drew support for this conclusion upon findings that

(1) those members of the panel who harbored reservations on their ability to remain impartial,

were removed for cause, and (2) "[t]he two jurors who were seated over [Ahmed's] objections

stated that despite their concerns, they were able to be fair and impartial and follow the Court's

instructions." ECF No. 15 at 20.

Ahmed contends that the Magistrate Judge erred in his consideration of this claim.[5]  ECF

No. 18 at 11-14.  The Court agrees.

### 1.    Law Relative to Jury Bias

Pursuant to the Sixth and Fourteenth Amendments, a criminal defendant is guaranteed the

right to an impartial and unbiased jury.  *Morgan v. Illinois*, 504 U.S. 719, 727, 119 L. Ed. 2d

492, 112 S. Ct. 2222 (1992).  And "[*v*]*oir dire* plays a critical function in assuring the criminal

_____

were eventually seated were biased against him as a result of the number of counts that were joined together. However, rather than being evaluated under the standard of whether joinder was proper, Ahmed's claim would best be addressed as one alleging juror bias.

ECF No. 8 at 35.

[5]  The Magistrate Judge also evaluated Ahmed's underlying claim of jury bias by examining whether Ahmed had established that a presumption of juror prejudice arose as a result of the trial court's decision to not sever the indictments.  *See Skilling v. United States*, 130 S. Ct. 2896 (2010) (determining whether defendant's Sixth Amendment right to trial by an impartial jury was violated under theory that a presumption of juror prejudice arose).  The Magistrate Judge concluded that Ahmed failed to meet the presumption of prejudice burden given that Ahmed was acquitted of most of the charges.  *See Skilling*, 130 S. Ct. at 2896 (finding that the factor of partial acquittal was "of prime significance" in refuting a presumption of juror bias).  Ahmed contends, however, that his jury bias claim is not based upon an argument of presumed prejudice, but rather actual prejudice.  ECF No. 18 at 12.  Thus, the Court declines to address the presumption of prejudice issue.

(1:09cv00624)

defendant that his [] right to an impartial jury will be honored." *Rosales-Lopez v. United States*, 451 U.S. 182, 188, 68 L. Ed. 2d 22, 101 S. Ct. 1629 (1981).

Deference is extended to the trial court's management of *voir dire*. The Supreme Court has acknowledged the "traditionally broad discretion accorded to the trial judge in conducting *voir dire*." *Mu'min v. Virginia*, 500 U.S. 415, 423, 114 L. Ed. 2d 493, 111 S. Ct. 1899 (1991) (quoting *Ham v. South Carolina*, 409 U.S. 524, 528, 35 L. Ed. 2d 46, 93 S. Ct. 848 (1973)). "Despite its importance, the adequacy of *voir dire* is not easily subject to appellate review. The trial judge . . . must reach conclusions as to impartiality and credibility by relying on [his or her] own evaluations of demeanor evidence and of responses to questions." *Mu'min*, 500 U.S. at 424 (quoting *Rosales-Lopez v. United States*, 451 U.S. 182, 188, 68 L. Ed. 2d 22, 101 S. Ct. 1629 (1981)).

"Although a trial court's broad discretion in the conduct of *voir dire* is "subject to essential demands of fairness," *Wolfe v. Brigano*, 232 F.3d 499, 504 (6th Cir. 2000), the Supreme Court has made clear that "[n]o hard-and-fast formula dictates the necessary depth or breadth of *voir dire*." *Skilling v. United States*, 130 S. Ct. 2896, 2917 (2010) (citing *United States v. Wood*, 299 U.S. 123, 145-146, 57 S. Ct. 177, 81 L. Ed. 78 (1936)).

## 2. Whether the Trial Court Empaneled an Impartial Jury

As indicated above, Ahmed's third ground for relief is premised upon his assertion that the trial court empaneled a biased jury. He draws support for this premise from the answers given by actual jurors during *voir dire*. Additionally, he attacks the trial court's *voir dire* process by comparing the *voir dire* process of the instant case to that examined by the Supreme Court in *Skilling v. United States*, 130 S. Ct. 2896 (2010).

11

(1:09cv00624)

In *Skilling*, the Supreme Court considered whether actual prejudice infected the Defendant's jury trial by evaluating the adequacy of the *voir dire* process and the jurors that were selected as a result of it.  *Id*. at 2917.  In concluding that actual prejudice was not present, the Court noted that the trial judge had screened venire members with a seventy-seven (77)-item questionnaire, drafted largely by the defense, which "served as a springboard for further questions."  *Id*. at 2919.  The Supreme Court additionally found it significant that the trial court "did not simply take venire members at their word" but instead "followed up with each individually to uncover concealed bias."  *Id*. at 2922-23.  The Court stated that "[t]his face-to-face opportunity to gauge demeanor and credibility, coupled with information from the questionnaires regarding jurors' backgrounds, opinions, and sources of news, gave the [trial] court a sturdy foundation to assess fitness for jury service."  *Id*. at 2923.

In contradistinction to the *voir dire* process in *Skilling*, Ahmed highlights that in his case there was no pre-screening questionnaire and the *voir dire* was done *en mass*, which he alleges enabled the spreading of prejudicial information to other venire members.  He further states that there was no searching inquiry by the trial court to weed out *pro forma* presentations of fairness.  But most significant, he contends, is that "while the Court in *Skilling* acknowledged that the jury selection process there had actually resulted in a panel which harbored no preconceptions of Skilling's guilt, [] at least two of the people who wound up on Petitioner Ahmed's jury [–Jurors JZ and UR–] had expressed an opinion of his guilt, based solely on the volume of charges against him."[6]  ECF No. 18 at 14.

---

[6] As the record and this opinion reflects, Jurors JZ and UR admitted to being impressed by the number of charges against Ahmed; each also admitted to being negatively influenced by

(1:09cv00624)

Ahmed's jury bias clam can be separated into two separate claims–one which involves "the partiality of an individual juror" and the other directed at "the partiality of the trial jury as a whole."  *See Skilling*, 130 S. Ct. at 2962, n.25 (noting that the two sorts of challenges are distinct and are therefore to be dealt with separately).

While the Court finds that Ahmed has failed to establish a claim for jury bias as to the partiality of the jury as a whole,[7] he does succeed in demonstrating that he is entitled to relief due to the partiality of two individual jurors.  *See* note 4, above.

Ahmed identified Jurors JZ and UR as harboring actual bias.  Defense Counsel challenged both for cause.  The trial judge refused to remove both jurors.  For reasons stated below, the Court finds the trial court's refusal to excuse Jurors JZ and UR was manifest error.

### a.    **Juror JZ**

In *Skilling*, the Supreme Court reiterated that in reviewing claims of juror impartiality the "deference due to [trial] courts is at its pinnacle: 'A trial court's findings of juror impartiality may be overturned only for manifest error.'"  *Skilling*, 130 S. Ct. at 2923 (citing *Mu'Min v. Virginia*, 500 U.S. 415 (1991)).

In determining whether the trial court erred in denying Ahmed's "for cause" challenges, this Court must ask: "[D]id a juror swear that he could set aside any opinion that he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been

their own past experiences with persons who had suffered sexual abuse.  *See supra*.

[7]  The Court finds that the *voir dire* process, viewed in its totality, cannot be categorized as fundamentally unfair, despite the deficiencies articulated by Ahmed.  *See Skilling*, 130 S. Ct. at 2918, n.20.

(1:09cv00624)

believed?"  *See Wolfe v. Brigano, 232 F.3d 499, 502 (6th Cir. 2000)* (citing *Patton v. Yount, 467 U.S. 1025, 1036, 81 L. Ed. 2d 847, 104 S. Ct. 2885 (1984)*).

With respect to Juror JZ, this inquiry yields an emphatic "No."  The record reflects that after the trial judge who, having received JZ's assurance that he would "use [his] common sense to arrive at a just and fair verdict as best [he could]," had concluded her questioning of Juror JZ and begun to move on to the next venireperson, JZ, an experienced attorney who described his putative role on the jury as a "leader" and "strong," *sua sponte* raised an important but unasked question.

> Juror JZ: Excuse me Your Honor.  There's one question you didn't ask as to whether I have any experience which would affect my ability to serve as a juror in this case.
>
> Court: Do you?
>
> Juror JZ: Yes, I do.
>
> Court: What would that be?
>
> Juror JZ: When I was in college, I dated a woman who was sexually assaulted brutally prior to my getting together with her and she  - - it impacted the relationship.

ECF No. 8-9 at 59, 63-65.  Juror JZ's admission prompted Defense counsel to request a side bar at which the following colloquy was had:

> Juror JZ: Good morning, Your Honor.   Sorry about this.  I was an undergraduate at Brandeis in the early '80's and I dated a woman who, just prior to coming to college, had been brutally raped by her employer.
>
> [After being admonished to speak more softly, JZ, continued.]
>
> Juror JZ: She would wake up with nightmares and relive the

14

(1:09cv00624)

experience during our relationship.  While I obviously understand my duty is to be as impartial as possible, I obviously cannot eradicate the fact that this proceeding may bring up old memories which may impact me in some way that I can't right now tell you, but I think it's important that counsel for both sides understand that, that I lived that rape for a year with her and so it may impact my ability to be impartial I think.

The Court: Okay. Have you arrived at any conclusion in this case yet?

Juror JZ: I'm concerned about the number of indictments, Your Honor.

The Court: When you say you're concerned, does that mean that - what the law requires, as you understand it, is that you listen to all of the information that will be provided to you.

Juror JZ: I'm aware of that.

The Court: And make a conclusion based only upon what you see or hear in the courtroom.

Juror JZ: I'm aware of that. I'm very aware of my responsibilities.

The Court: Could you do that?

Juror JZ: I would do my best.

The Court: So you would work at it?

Juror JZ: I would do my absolute best. I'm generally pretty good at doing what I need to do, but I can't–I just think its important to disclose that fact to everybody concerned.

ECF No. 8-9 at 65-66.

In an effort to better understand Juror JZ's position, Defense Counsel emphasized the importance of impartiality and told Juror JZ that he had failed to give a definitive answer on his

15

(1:09cv00624)
ability to be impartial.

> Defense Counsel: Just briefly, I mean the judge asked if you can put these things aside and be fair and impartial to both sides.  As you stand here I haven't heard you say yes yet.  I have heard you say you will do your best.  And I understand – I think I understand why you're hesitating, but it's important for us to know whether or not the events you described, if you think it would put you in such a position that you can't guarantee us right now as you stand here that you can't be fair to both sides.

ECF No. 8-9 at 66-67.  Juror JZ responded with another equivocal statement which ended with: "I am concerned that depending on how the facts are relayed, you know, can I apply the facts, yes, can I apply the law, yes.  I don't practice in criminal law.  *I think I might–I would do my best is the best answer I can give.  That's really the best answer I can give.*"  ECF No. 8-9 at 67 (emphasis added).

In their final exchange, Defense Counsel asked Juror JZ whether he was the kind of juror Ahmed would want on his case.  The prosecution lodged an objection that the trial judge sustained.  ECF No. 8-9 at 67-68.  Juror JZ, ignoring the judge's ruling disallowing the inquiry, volunteered the following:  "Let me suggest this.  If I was the defendant in this case, I wouldn't want anybody on the panel who had been that close to somebody who had been raped if I had any concerns about my innocence.  That's the best that I can tell you."  ECF No. 8-9 at 68.

Juror JZ failed to unequivocally state that he could decide the case fairly.  Instead, as the above dialogue shows, Juror JZ continually expressed doubt as to his ability to be impartial.  Twice, he volunteered information auguring bias.

Nevertheless, the trial judge did not follow up "to uncover concealed bias," and, to the detriment of Ahmed's right to a fair and impartial jury, refused to excuse Juror JZ for cause.  In

16

(1:09cv00624)

denying Defense Counsel's request to remove Juror JZ for cause, the trial judge apparently relied

upon JZ's tentative promise that "he would try really hard" to be impartial.  ECF No. 8-9 at 69.

Pursuant to Sixth Circuit case law, the trial judge's reliance on such a tentative indication of

impartiality was insufficient.  As a result, the trial judge's refusal to dismiss Juror JZ for cause

constituted manifest error.

In *Wolfe v. Brigano*, 232 F.3d 499 (6th Cir. 2000), the Sixth Circuit decided practically

the same issue presented herein–whether the trial court erred in denying Defendant's for-cause

challenges.  The Sixth Circuit ruled that the trial judge had erred because "his findings of

impartiality [were based] exclusively upon each juror's tentative statements that they would try to

decide this case on the evidence presented at trial." *Id*. at 503. The Court noted that "[s]uch

statements, without more, are insufficient." *Id*.  In explaining its reasoning, the Court stated:

"The Sixth Amendment guarantees Wolfe the right to a jury that will hear his case impartially,

not one that tentatively promises to try.  Failure to remove biased jurors taints the entire trial, and

therefore, Wolfe's conviction must be overturned." *Id*.

As in *Wolfe*, the trial court in the instant case improperly based its finding of impartiality

on Juror JZ's *equivocal* statements and, therefore, committed manifest error by denying Defense

Counsel's challenge to remove for cause.  And as in *Wolfe*, this error requires Ahmed's

conviction to be overturned.

### b.    Juror UR

While not blatantly volunteering his bias like Juror JZ, Juror UR's presence on the jury is

nonetheless problematic.  Unlike Juror JZ, Juror UR gave an affirmative promise of impartiality.

This alone, however, is not sufficient to erase the spectre of juror bias created by the totality of

(1:09cv00624)
his *voir dire*.

The Sixth Circuit has clearly ruled that "[n]ot only must the juror give an affirmative promise of impartiality, but also that promise must be believable in light of what the juror has revealed and the context of the case." *Holder v. Palmer*, 588 F.3d 328, 344 (6th Cir. 2009) (citing *Miller v. Webb*, 385 F.3d 666, 677, n.2 (6th Cir. 2004)).  In the Court's view, Juror UR's assurances of impartiality lack credibility when considered in totality with other statements he made which bespeak actual bias.

Specifically, UR stated that he believed Ahmed was guilty.  ECF No. 8-9 at 142 ("I just feel that the defendant, in fairness to him, that the defendant is somewhat guilty of this.").  More importantly, Juror UR failed to convincingly indicate that he abandoned that belief.  When asked whether any experience would affect his ability to be a juror or his ability to be impartial, Juror UR repeatedly expressed a belief that men, in particular, have a tendency to not be truthful unless pushed into a corner.  ECF No. 8-9 at 135, 136, 137,142 .  When asked if there was anything else that he wanted to bring to the attention of the court and counsel that would affect his ability to be a juror in the case, Juror UR candidly offered:

> Juror UR:  I would say a lot of times, if I may speak freely, I think that men sometime has a tendency to go into denial sometime and I draw my conclusion a lot of times from watching television shows whether the person is guilty or innocent.  I come to those conclusions and I draws my decision from some experience that I may have seen in the past in my life and something that I – you know, sometimes we don't discuss things when we ought to when someone's life is on the line and I just come to that conclusion sometime. I just think that people sometime don't admit and tell the truth behind everything.

ECF No. 8-9 at 135-36.

(1:09cv00624)

When explicitly asked by the Court whether he could be impartial--"fair to both the government and the defendant"--UR expressed difficulty with this task due to a history of sexual abuse occurring within his own family.  He shared the following:

> Juror UR: I think it would be kind of hard because there have been some incidents in my own personal family going back some years involving some incest with my sister that was sexually abused.
>
> Court: Some of your sisters were abused?
>
> Juror UR: Yes.  And recently, last year my older daughter that's down in Georgia, she was staying with a guy that touched my grandchild and I think I'm just – I didn't say those things out loud at first.  He touched my granddaughter []I believe that most men, they live in denial until they really are pushed into a corner because I draw a lot of time the conclusion that most guys are guilty of a lot of things and they just don't admit it until they just trapped.

ECF No. 8-9 at 141-42

After Juror UR revealed that his sister is a victim of incest, and his granddaughter suffered sexual abuse as recently as the year before Ahmed's trial,  ECF No. 8-9 at 141-42, the trial court asked him whether he had arrived at a conclusion in the case.  Juror UR stated the following:

> Juror UR:  Well, I haven't, no, but to be honest with you, when I heard the amount of counts that you read and the number of victims, I said where there's smoke, there's fire, and there's some guilt there somewhere, and I know this case is going to have to be a unanimous decision, and *I just feel that the defendant, in fairness to him, that the defendant is somewhat guilty of this. I almost have arrived at that conclusion. I'm just being fair and honest*.

ECF No. 8-9 at 142 (emphasis added).

In response to questions meant to rehabilitate him, Juror UR answered that he would follow the instructions given by the Court; could decide the credibility of the witnesses in the

19

(1:09cv00624)

case; and that he did not start off favoring one side or the other. ECF No. 8-9 at 144-45. And, when explicitly asked whether he could be fair and impartial to the defendant, Juror UR replied "yes." ECF No. 8-9 at 146.

The undersigned's inquiry could end here but for Juror UR, in true see-saw fashion when further probed by Defense Counsel, admitted that (1) there was a possibility that he may have trouble being fair in light of his familial experiences with sexual abuse and, despite the trial judge's instructions, (2) he did not view the parties as starting out on an equal footing. ECF No. 8-9 at 147-48. Their exchange is repeated below:

> Juror UR: Yes.
>
> Defense Counsel: Yeah. Based on everything you have told us, I mean, you seem to have suggested that you really believe that you can start out - both sides can start out an equal footing based on what you have told us or do you believe Dr. Ahmed really starts out a little bit behind based on your personal feelings?
>
> Juror UR: I think he starts off behind.
>
> Defense Counsel: And you understand that the Court tells you you can't feel that way.
>
> Juror UR: Yes.
>
> Defense Counsel: Regardless of what the Court has told you, you can't help but to feel that way?
>
> Defense Counsel: Okay, I have nothing further at this time.
>
> The Court: Anything further?
>
> Prosecution: Nothing.
>
> The Court: Sir, do you want to have a seat, please?

20

(1:09cv00624)

ECF No. 8-9 at 146-47.  Despite his confession that Ahmed started out behind, the trial court

seated Juror UR without any additional follow up questions.

UR's admission that Ahmed "starts off behind" evidences his inability to observe the

presumption of innocence standard.[8]  Rather than enter the jury box with an open mind, Juror UR

admitted that he could not help but to feel that Ahmed was "behind."[9]  Remarkably, there was no

subsequent *voir dire* or assurances of impartiality after these statements were made.  There were

no rehabilitation attempts or follow-up by the Prosecution or trial court.  The record is devoid of

_____

[8]  The presumption of innocence is a vital and fundamental principle of legendary
proportions.   *See Coffin v. United States*, 156 U.S. 432, 460 (1895). The prophylactic
underpinnings of this  fundamental right are so revered that, although the Due Process Clause
itself does not necessarily require that juries be instructed on the presumption of innocence, the
Supreme Court of the United States has exercised its supervisory powers to require that federal
criminal trial juries be instructed.  *See Taylor v. Kentucky*, 436 U.S. 478 (1978) Stevens,
dissenting ("in a federal court it is reversible error to refuse a request for a proper instruction on
the presumption of innocence.").  The Sixth Circuit "in strong dictum" has required the same.
*See United States v. Hill*, 738 F.2d 152, 153 (6th Cir. 1984) ("Jury instructions concerning the
presumption of innocence and proof beyond a reasonable doubt are fundamental rights possessed
by every citizen charged with a crime in these United States.").  Ohio has followed suit urging
that jurors be instructed preliminarily and again at the close of evidence.  *See* 207.11, Burden of
proof: sample instruction, Rev'd  Dec. 11, 2010.   It is irrefutable that seating a juror who is not
impartial is violative of the defendant's constitutional right to a presumption of innocence.  The
Supreme Court has described the presumption of innocence as a "shorthand description of the
right to the accused to remain inactive and secure, until the prosecution has taken up its burden
and produced evidence and effected persuasion." *Taylor*, 436 U.S. at 483-84 n.12.  Its main
purpose is to "purge" any suspicions the jurors may have arising from "official suspicion,
indictment (or) continued custody," and to emphasize to the jurors that their decision must be
based "solely on the . . . evidence introduced at trial."  *Id* at 484-86.  While Ahmed's injury
occurred with the seating of the jury rather than during their instruction, the record before the
Court shows that he was deprived of this fundamental right when Jurors JZ and UR were seated
on the jury.

[9] *Compare Patton v. Yount*, 467 U.S. 1025, 1039 (affirming the trial judge's decision to
seat Juror Hrin, after the trial judge denied the challenge to remove for cause, when during cross
examination from the defense, Juror Hrin indicated that he could enter the jury box with very
open mind).

(1:09cv00624)

any suggestion that Juror UR set aside his already formed opinion against Ahmed before rendering judgment against Ahmed.

Glaringly absent is a thorough credibility determination by the trial judge. This would have required something more than merely accepting Juror UR's equivocal statements of impartiality. *Compare Skilling*, 130 S.Ct. at 2923 (noting that the Fifth Circuit Court of Appeals found that the trial court made "'thorough' credibility determinations that 'requir[ed] more than just the [venire members'] statements that [they] could be fair.'").

Consequently, this Court is left to analyze the record before it which contains statements of impartiality overshadowed by a slew of comments evidencing actual bias. Despite the highly deferential review accorded to the State court's finding of fact,[10] the Court finds that the trial judge should have discredited Juror UR's promises of fairness and granted Defense Counsel's for cause challenge. In failing to do so, the trial judge committed manifest error.[11]

Based upon the foregoing discussion, the Court concludes that the State of Ohio violated

_____

[10] *See Skilling*, 130 S. Ct. at 2923 (noting that in regards to findings of impartiality, deference to the trial court is at its pinnacle).

[11] In *Patton v. Yount*, 467 U.S. 1025, 1039-40 (1984), the Supreme Court found that the trial court did not commit manifest error when finding Juror Pyott impartial, in spite of the fact that the juror made contradictory statements regarding the juror's ability to be impartial. The Court based its conclusion, in part, on the "type of leading questions and cross examination tactics . . . that were evident in th[e] case." *Id.* at 1039-40. The Court stated that "[t]he trial judge properly may choose to believe those statements that were the most fully articulated or that appeared to have been least influenced by leading." *Id*.

What distinguishes the instant case from *Patton*, is the absence of manipulation from counsel in eliciting responses from Juror UR and the many indications of bias reflected in the record. Juror UR repeatedly provided statements evidencing his opinion of Ahmed's guilt and expressed his inability to set aside his preconceived notions. It is the opinion of the undersigned that Defense Counsel's request to remove Juror UR for cause should have been granted.

(1:09cv00624)

Ahmed's Sixth Amendment right (made applicable to the states *via* the Fourteenth Amendment) to an impartial and unbiased jury.  Accordingly, Ahmed is entitled to the issuance of a writ based upon his claim of jury bias presented in Ground Three.[12]

### D.     Ground Four – Judicial Bias

In Ground Four, Ahmed raises a claim of judicial bias.  He contends that the trial court rulings prevented him from presenting a defense and permitted the prosecution to present irrelevant and inadmissible evidence.  ECF No. 1 at 6-7.

The Magistrate Judge reviewed Ahmed's claim *de novo* and found Ahmed's claim lacked merit.  Relying upon Supreme Court case law, *Liteky v. United States*, 510 U.S. 540, 555 (1994), the Magistrate Judge noted, "[f]ederal law on this topic of judicial bias is that 'judicial rulings alone almost never constitute a valid basis for a bias or partiality motion'" and that "[r]ulings 'are grounds for appeal, not recusal.'"  ECF No. 15 at 22 (citing *Liteky*, 510 U.S. at 555 (1994)).  The Magistrate Judge concluded that "the trial court's unfavorable rulings fall far short of demonstrating bias."  ECF No. 15 at 22.

In his objections, Ahmed noted his disagreement with the Magistrate Judge's analysis and ultimate conclusion.  He takes particular issue with the Magistrate Judge's reliance upon *Liteky*.  He contends that *Liteky* does not stand for the proposition that evidentiary rulings are *never* sufficient to justify a finding of bias.  ECF No. 18 at 15-16.

------

[12]  Initially, the Court granted the writ based upon the seating of Juror JZ.  Had it been necessary to issue the writ based only upon the seating of Juror UR, the Court may have been inclined to issue the writ conditionally and to remand the case to the trial court to conduct the appropriate proceedings.  Because the Court has twice determined that Ahmed is entitled to the writ for a related justification of the same ground for relief–Ground Three's Juror Bias–it would be futile to direct the trial court to conduct appropriate proceedings below.

(1:09cv00624)

While Ahmed's assessment regarding the significance of *Liteky* may be true, he ignores a more significant point–he still bears the burden of demonstrating actual bias. In the instant case, the judicial rulings foisted by Ahmed fail to establish that the judge held an actual bias against Ahmed. The rulings proffered "evince[] a predisposition so extreme as to display clear inability to render fair judgment." *See Johnson v. Bagley*, 544 F.3d 592, 597 (6th Cir. 2008) (citing *Liteky*, 510 U.S. at 551) (internal quotations omitted). Accordingly, Ahmed's objection is overruled.

### E. Ground Five – Retroactive Application of *State v. Foster*

In Ground Five, Ahmed alleges that he was prejudiced by the retroactive application of *State v. Foster*, 109 Ohio St.3d 1 (Ohio 2006) to his case. He contends that the State court's imposition of maximum and consecutive sentences in the post-*Foster* statutory regime violated the proscription against *ex post facto* laws and the Fourteenth Amendment. ECF Nos. 1 at 7; 18 at 16-18.

In the Report and Recommendation, the Magistrate Judge acknowledged the State's argument that the instant claim had been procedurally defaulted. But, rather than analyze the claim under a procedural default analysis, the Magistrate Judge found that it would be more efficient to address the claim on the merits. ECF No. 15 at 23-24. In doing so, the Magistrate Judge concluded that Ahmed's claim was without merit based upon the Sixth Circuit Court of Appeals' ruling in *Hooks v. Sheets*, 603 F.3d 316 (6th Cir. 2010). In *Hooks*, the Sixth Circuit rejected an argument substantially similar to that presented by Ahmed. *Id.* In his objections, Ahmed asserts that the "Magistrate Judge erred in applying *Hooks* to this case, because of the significantly different procedural posture between that case and this one." ECF No. 18 at 17. He

24

(1:09cv00624)

further states,

> [t]he distinction between this case and *Hooks* is that in this case, Petitioner Ahmed can show actual prejudice as a result of how *Foster* altered Ohio's sentencing scheme. Simply put, the Ohio court of appeals determined that the trial court did not make the necessary findings to warrant imposition of more-than-minimum, maximum, or consecutive sentences. That determination was effectively nullified by the *Foster* decision.

ECF No. 18 at 19-20.

The Court finds said "distinction" to be a distinction without a difference for it does not alter the applicability of the holding in *Hooks* to the case at hand.  As in *Hooks*, Ahmed was always subject to consecutive sentences according to the "guided discretion" of the court and was always aware of his potential for consecutive sentences.  *Hooks*, 603 F.3d at 321.  Thus, as in *Hooks*, this Court holds that Ahmed's "re-sentencing under *Foster* did not raise *ex post facto* or due process concerns."  *Id.*  Ahmed's objection is therefore overruled.

### F.        Grounds Six and Seven – Insufficiency of the Evidence

In Grounds Six and Seven, Ahmed contends that there was insufficient evidence to support his conviction of two counts of rape, and conviction of five counts of sexual battery, respectively.  ECF No. 1 at 7-8.  The Magistrate Judge reviewed these claims *de novo* under the standard articulated in *Jackson v. Virginia*, 443 U.S. 307, 309-16 (1979), and concluded that neither claim had merit.  ECF No. 15 at 24-31.

In his objections, Ahmed merely repeats the arguments that were presented in his Traverse, which were already addressed by the Magistrate Judge.  ECF Nos. 12 at 20-33; 18 at 20-22.  The Court, seeing no error in the Magistrate Judge's legal analysis and resulting conclusion, overrules Ahmed's objections concerning Ground Six and Ground Seven.

25

(1:09cv00624)

    **G.**      **Ground Eight – *Brady* Violation**

      In Ground Eight, Ahmed claims that his due process rights under *Brady v. Maryland*, 373

U.S. 83, 87 (1963) were violated by three separate instances of prosecutorial misconduct.  ECF

No. 1 at 8.  In his objections, however, Ahmed withdraws two of the alleged incidents.  ECF No.

18 at 24, n.5.  What remains is his claim that the State failed to disclose a "deal" to dismiss

pending criminal charges against "S.T.," a complaining witness.

      The Magistrate Judge explained each party's respective arguments concerning Ahmed's

allegation as follows:

> Dr. Ahmed argues that the State dismissed an eight count indictment against S.T.
> for receiving stolen property, without prejudice, so S.T. would not have a criminal
> record when she testified against Dr. Ahmed at his trial. Dr. Ahmed contends that
> these felony counts remained "hanging" over her, however, to ensure that S.T.
> would be a "forceful witness." The State of Ohio, however, maintains that these
> charges were dismissed because S.T. had been the victim of identity theft.

ECF No. 15 at 34.

      Ultimately, the Magistrate Judge found Ahmed's claim non-meritorious.  Reviewing the

claim *de novo*, the Magistrate Judge reached this conclusion after finding that Ahmed's proffered

evidence failed to establish the existence of a secret deal between S.T. and the State.  First, the

Magistrate Judge noted that the evidence did not disprove Respondent's argument regarding the

charges being dismissed due to identify theft.  ECF No. 15 at 35.  Second, the Magistrate Judge

highlighted that S.T.'s allegations constituted only two of the forty counts of sexual imposition

and sexual battery lodged against Ahmed.  Given this fact, the Magistrate Judge found it

incredulous that the State would concoct such an elaborate scheme for a witness who was not

central to its case against Ahmed.  ECF No. 15 at 36.  The Court agrees.

(1:09cv00624)

Although in his objections, Petitioner seeks to undermine the Magistrate Judge's findings by explaining how his evidence negates the State's claim of identity theft, the Court finds Ahmed's arguments unpersuasive. Ahmed's objection is overruled.

## V. **Conclusion**

For the reasons discussed above, the Court adopts, in part, the Magistrate Judge's Report and Recommendation. ECF No. 15.

It is ordered that Petitioner Azzam Ahmed's application for a writ of habeas corpus be granted, in part, and denied with prejudice, in part. ECF No. 1. The application is granted as to Ahmed's claim that he was denied his constitutional right to a trial by a fair and impartial jury, presented in Ground Three. The application in all other respects is denied.

It is further ordered that Respondent either (1) set aside Petitioner Azzam Ahmed's convictions and sentences, or (2) conduct another trial. This shall be done within 180 days from the effective date of this Order. On this Court's own motion, execution of this Order and, hence, its effective date, is stayed pending appeal by the parties.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

IT IS SO ORDERED.

_9/30/2012_
Date

Benita Y. Pearson
United States District Judge

27